1

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| WILFREDO DE JESÚS-RIVERA & SONIA M. HERNÁNDEZ-MELÉNDEZ | CASE NO.: 00-00801(GAC) |
| Hearing on Damages | Old San Juan, Puerto Rico June 9, 2006 |

**HEARING**
HELD BEFORE THE HONORABLE GERARDO A. CARLO
UNITED STATES BANKRUPTCY COURT JUDGE
FEDERAL COURTHOUSE, OLD SAN JUAN, PUERTO RICO

APPEARANCES:

| | |
|---|---|
| For the Debtor: | R. Pérez-Obregón, Esq. |
| For the Creditor: | N. Landrau-Rivera, Esq. W. Segarra-Miranda, Esq. |
| For the Ch. 13 Trustee: | J. Carrión-Morales, Esq. |
| Court Interpreter: | Ms. Patricia Beckerleg |
| Court Recorder: | Alba Iris Ramos |

**JAMES ROHAN REPORTERS**
Tel. 725-7203 Cell 329-0114 Email rohanmav@aol.com
P.O. Box 16062, Santurce, P.R. 00908

2

**P R O C E E D I N G S**

1

2                                             (8:57 A.M.)

3                    HONORABLE JUDGE CARLO:        The

4       motions that you filed yesterday, do I have them?

5                    It was filed after 5:00 p.m. in the

6       afternoon.  I barely had a chance to look them

7       over before we came in, so why don't you tell me

8       what... why you were filing this motion, so they

9       and why this Court is considering them.

10                   MS. LANDRAU-RIVERA:        Your Honor,

11      a supplemental pleading was filed by Plaintiffs in

12      which they requested that the depreciation of

13      GEC's collateral of that the equipment, be

14      included.  And the Motion was filed on the

15      afternoon on Thursday.

16                   This Court entered an order, which

17      stated that it would consider those motions today.

18      That is why yesterday we had hearings in the

19      morning, and in the afternoon we could reach the

20      office an prepare an opposition to the

21      supplemental pleadings.

22                   And in preparation for this hearing

23      we came across certain information and new

24      evidence which certainly affects the outcome of

25      this hearing and the witnesses, or the allegations

3

1   which are being discussed in this hearing this

2   morning.

3          Just briefly, this complaint was

4   filed by Plaintiffs on July 13th, 2004, and that

5   date is important because with the Complaint

6   Debtor or Plaintiffs made fourteen allegations...

7          MR. PÉREZ-OBREGÓN:      Excuse me,

8   Your Honor.  Your Honor, if Counsel has doubts as

9   to the veracity of the complaint, they can be

10  dispelled during cross interrogation by my

11  clients, who are present this morning.

12         HONORABLE JUDGE CARLO:      Well, we

13  were discussing the motions here, Counsel.  I've

14  asked Counsel to explain the motions that were

15  filed last evening, and so I think she is right.

16  Let's not interrupt each other.  You'll have a

17  chance to respond.  This is just argument.  Go

18  ahead.

19         MS. LANDRAU-RIVERA:      Your Honor,

20  the situation is that a supplemental pleading was

21  filed, and that was not included in that Complaint

22  and...

23         HONORABLE JUDGE CARLO:      Right.

24         MS. LANDRAU-RIVERA:      ...had to

25  review everything regarding the Complaint.  And

4

1    that damages... because GE recognizes the order

2    and the partial judgment, which was already

3    entered by this court, that is recognized and we

4    recognize that, and, of course, GE will abide by

5    that.

6              However, we are here for a hearing on

7    damages, so we looked at the Complaint, especially

8    in light of the supplemental pleading, and the

9    Complaint is made of fourteen allegations.  The

10   first ten are facts which area being alleged and

11   have already been stipulated in the Summary

12   Judgments that were presented before this Court.

13             Now, the damages are alleged

14   specifically in paragraphs eleven, twelve and

15   thirteen... thirteen and fourteen.

16             Number eleven and twelve have to do

17   with the fact that...  And I read textually

18   from... literally from the allegation.  It says

19   that GE, General Electric Corporation's actions

20   have caused and continue to cause damage to

21   Debtors.                    HONORABLE JUDGE

22   CARLO:     Okay.

23            MS. LANDRAU-RIVERA:     In as much

24   Cooperativa de Transporte de Carga through which

25   co-petitioner Wilfredo De Jesús-Rivera works,

1    requires that its drivers operate vehicles no more

2    than seven years old.

3            The other allegation states that

4    since General Electric Corporation refuses to

5    relinquish title to the vehicle, Debtors are

6    economically precluded from acquiring an a newer

7    model, since they can not use the 1997 Peterbuilt

8    Truck Tractor for trading purposes.

9            And then 13 says "Defendants refusal

10   to relinquish title of that said vehicle as well

11   as its unlawful appropriation of Debtor's

12   insurance check has caused damage to Plaintiffs

13   and constitutes wilful violation and everything

14   else that the Court has already ruled upon."

15           Now, Your Honor, we have verified,

16   and of course, we have a duty to verify the

17   veracity and the truthfulness of these

18   allegations.

19           And that is why at 9:00 O'clock

20   yesterday we entered into the DESCO Tech, which is

21   the Department of Transportation and Public Works

22   web site, which is public, and you can access that

23   through the Social Security Number Debtor, which

24   has been listed in the Petition, and we discovered

25   that there are several vehicles in the name of

6

1   Debtor, or Plaintiff, Wilfredo De Jesús.

2            And that actually on July 2nd, which

3   is scarcely ten days or eleven days before the

4   filing of this Complaint he had purchased a 2005

5   Kenworth Motor Truck and had financed said vehicle

6   through Cooperativa de Caguas.

7            Therefore, those are... that is a...

8   We were, of course, were uphold because this is a

9   complete, not only misrepresentation, but it is

10  false, that they were economically precluded.

11           And, of course, Your Honor, Plaintiff

12  and Counsel have an obligation to set forth before

13  this Court allegations which have... may have some

14  kind of veracity, Your Honor, because they

15  specifically allege that they could not get a new

16  model because GE refused to relinquish title.

17           And, Your Honor, we filed a...

18  immediately we filed a motion to strike regarding

19  that.  That is the first point, Your Honor.

20           Second, is the fact that Debtor in

21  the pre-trial that he filed and in the exhibits

22  that were... or the identifications that were

23  provided to us this morning, he provided a

24  curriculum vitae of psychiatrist.  Of a

25  psychiatrist.

7

1          Now, the situation is, Your Honor,

2     that when we reviewed and we specifically reviewed

3     the allegations made in that complaint, no

4     emotional damages had been claimed in that

5     complaint.

6          It is not even claimed in the

7     supplemental pleading what... and I read again

8     textually, and we have copy, if the Court wants to

9     have it just handy, that specifically the words

10    are "that has caused damages to Plaintiffs that

11    constitute a willful violation".

12          No emotional damages have been

13    claimed in this.  We have the curriculum vitae,

14    but wen do not have an expert witness report.

15          And we moved that if this Court is

16    going, of course, to allow testimony as to

17    damages, that testimony as to this professional,

18    which we have no doubt that she is, will not be

19    allowed to testify as to emotional damages because

20    they are pled in the Complaint.

21          And moreover, Your Honor, we are also

22    requesting the striking of allegations number

23    eleven and twelve of the Complaint, which are

24    damages and are completely false.  They are not

25    true, and at the moment of the filing of the

8

1    Complaint, that fact was known to Plaintiff.

2                    MR. PÉREZ-OBREGÓN:      Your Honor...

3    Dr.  Carmen Sanz was included...

4                    HONORABLE JUDGE CARLO:     I am

5    sorry?

6                    MR. PÉREZ-OBREGÓN:      Dr. Carmen

7    Sanz, the person who was included as a witness in

8    the pre-trial report filed on July... in July of

9    2005.

10                   And it is stated that she is

11   psychiatrist.  She's been there, it's just been

12   announced for over a year, and during all time,

13   Your Honor, the opposing party has not requested a

14   deposition from this psychiatrist nor any other

15   documents relating to her testimony, Your Honor.

16                   HONORABLE JUDGE CARLO:     Has any

17   discovery been conducted?

18                   MR. PÉREZ-OBREGÓN:      Discovery has

19   been conducted and concluded in... by order of

20   this Court, in May... in April of last year, if I

21   recall correctly.

22                   MS. LANDRAU-RIVERA:      If I

23   may, Your Honor?

24                   HONORABLE JUDGE CARLO:     No, no,

25   one at a time.  One at a time.  You may continue.

9

1   He is arguing.

2           MS. LANDRAU-RIVERA:        It is just

3   as to the discovery that you...

4           HONORABLE JUDGE CARLO:        No, you

5   may have a chance.  Let's not get into discussions

6   here.  That is your argument...

7           MR. PÉREZ-OBREGÓN:        Yes, Your

8   Honor.  In accordance to this Court's order,

9   discovery was supposed to have included... You'll

10  bear with me, Your Honor, it's a lot of documents.

11  Docket number 39.

12          Docket number 37, Your Honor, order

13  granting, discovery deadline was April 29th, 2005.

14  During all that time, Your Honor, opposing Counsel

15  has not requested any information from the

16  psychiatrist, in spite of the fact that it was

17  included in the pre-trial report as a witness in

18  July of 2005.

19          Moreover, Your Honor, this hearing

20  today was announced... was scheduled by this Court

21  in February of 2006, over four months ago.

22          And during all that time opposing

23  party has not requested any other documents, Your

24  Honor, or any doubts as to the psychiatrist to be

25  presented here today.

1        Your Honor, this is a pattern that

2    the opposing party has in relation to this case.

3    They ignored the Court's order as to the pre-

4    trials, they ignored the Court's order as to

5    deadline.

6        Your Honor, this Court ordered that

7    the title of the vehicle and certain monies be

8    returned to the Debtors in February 2006, in spite

9    of the fact that this party wrote opposing party a

10   letter in April, in August... in April of this

11   year, to comply with this Court's order.  That

12   order hasn't been complied with, Your Honor.

13       As to the vehicle my client has, he

14   is prepared today to testify under oath the

15   circumstances of that acquisition, Your Honor.

16       My clients have complied with this

17   Court's orders and they paid good money to the

18   Interpreter that was supposed to be here today,

19   and for the psychiatrist who is here this morning,

20   Your Honor.

21       If this case...  If this hearing were

22   to be cancelled, my clients wouldn't have the

23   funds to pay them to come back another day.

24       And, Your Honor, the Interpreter has

25   arrived.

11

1          HONORABLE JUDGE CARLO:      Okay.

2    Regarding your motion to file supplemental

3    pleading, Counsel, what... can you explain why we

4    should admit the supplemental pleading?  It was

5    Docket...

6          MR. PÉREZ-OBREGÓN:       Yes, I will,

7    Your Honor.  Through procedure 15 b, applicable

8    under federal rules of bankruptcy procedures,

9    70105, permits a party to serve a supplemental

10   pleading setting forth transactions or occurrences

11   that have transpired since the date of the initial

12   complaint.

13          Obviously, Your Honor, on the date of

14   the initial complaint, this allegation did not

15   exist yet.

16          Now, it's been two years since the

17   Complaint was filed, and what we wish to allege,

18   Your Honor, is the natural of that truck in the

19   last... in the past two years.

20          Obviously, that truck isn't worth

21   today what it was worth two years ago.  And that

22   is basically the only allegation in relation in

23   relation to that, Your Honor.  How much was it

24   worth then and how much is it worth now.

25          HONORABLE JUDGE CARLO:      But why

12

1    does that require a supplemental pleading?

2

3              Why do you decide to file this as a

4    supplemental pleading?   Why can't that be

5    included within the complaint that you filed

6    originally?  Isn't that also...

7              MR. PÉREZ-OBREGÓN:      Well, because

8    two years have transpired.

9              Obviously, it had not depreciated to

10   the value that is it now, two years later, Your

11   Honor.

12             HONORABLE JUDGE CARLO:      Yes, the

13   problem with the supplemental pleading is that it

14   calls for possibly additional discovery, and we

15   would have to suspend the trial today to consider

16   that issue, if we weren't going to allow, I think,

17   the supplemental pleading.

18             So, as far as I am concerned, I am

19   denying the motion for supplemental pleading.  It

20   was filed too late, there is no good reason to

21   admit at this stage of the proceedings without

22   going into discovery.

23             We are not going to continue this

24   case.  I believe the original complaint, because

25   this is a hearing on damages, and I don't think

13

1    you need a supplemental pleading to allege the

2    depreciation value or the damages that occurred

3    during that time.

4              Frankly, your complaint was broad

5    enough to include that sort of damages.  So you

6    may bring evidence then, but the supplemental

7    pleading as such is not admitted.

8              MR. PÉREZ-OBREGÓN:     Very well,

9    Your Honor, we accept that.

10             HONORABLE JUDGE CARLO:     Okay.

11   The motion to strike the allegations of the

12   Complaint and for sanctions under federal rules

13   based on the arguments that have been made today

14   are denied, or is denied.  I believe that is

15   Docket 44.

16             The opposition to supplemental

17   pleading is granted as stated by this Court.

18   Okay?

19             MR. PÉREZ-OBREGÓN:     Yes, Your

20   Honor.

21             HONORABLE JUDGE CARLO:     The...

22             MS. LANDRAU-RIVERA:     May I

23   address the Court?

24             HONORABLE JUDGE CARLO:     Wait...

25   Yes, Counsel.

14

1          MS. LANDRAU-RIVERA:        Your Honor,

2     for purposes of appeal we would like to request a

3     basis upon the denial of the motion to strike.

4          HONORABLE JUDGE CARLO:

5     Basically, Counsel, the motion to strike is denied

6     based on the arguments that have been made in open

7     court by Counsel.

8          Your motion to strike ane eliminate

9     allegations is based on the fact that discovery

10    had to be conducted, is that correct?

11         MS. LANDRAU-RIVERA:        No.  If I

12    may, Your Honor?

13         HONORABLE JUDGE CARLO:        Yes.

14         MS. LANDRAU-RIVERA:        Okay.  Your

15    Honor, we... I want to clarify something for the

16    record, and this is very important.  Your Honor,

17    GEC did, and I say "did" again, d-i-d, conduct

18    discovery in this case, and it was timely

19    performed.

20         General Electric notified timely an

21    interrogatory and a request for production of

22    documents.  In that interrogatory and request for

23    product of documents, we requested that Debtor

24    provide, or Plaintiffs provide, all of... a

25    detailed account of the testimony which was going

1    to be presented before this Court today by each

2    witness.

3                    And that...  And I... And it was filed

4    with the motions, specifically the answer was that

5    it would be provided before trial.

6                    Now, Counsel for Plaintiff states that

7    we did not perform any discovery, that is not

8    true.  Moreover, when this Court entered the

9    judgement regarding the Motion to Dismiss and the

10   Summary Judgement in February.

11                   We notified a deposition and a

12   subpoena for deposition upon Plaintiff.  And he

13   refused to go to said deposition.  He filed a

14   Motion for Dismiss, which we recognize that was

15   granted by this Court.

16                   However, Your Honor, GE requested the

17   evidence as to the damages, GE requested the

18   evidence which was going to be presented before

19   this Court, and GE specifically requested before

20   this hearing several meetings with brother Counsel

21   to discuss this case, discuss the possibility of a

22   transaction, and discuss any kind of evidence, or

23   discovery, or information that had to be exchanged

24   among counsels in order to come here.

25                   Your Honor, I personally called

16

1    brother Counsel, and he specifically stated that

2    that would have to be sought by the Court in its

3    day and that the court hearing was already set for

4    this date.

5           And, Your Honor, we had no other

6    option than to file motions before this Court, and

7    wait for this hearing.

8           That is why, Your Honor, when he says

9    that we did not conduct discovery, Your Honor,

10   that is not correct, we conducted discovery and it

11   was part of our motions, and we even have evidence

12   that we had provided that... which were going to

13   be the witnesses today.

14          However, Your Honor, we do not have a

15   little account of what it is that it is going to

16   testify, and that was timely requested before this

17   Court, Your Honor.

18          As to... And I will probably make this

19   argument as to the reconsideration, Your Honor,

20   this Court hears or... *Atiende*.  Attends the

21   pleadings which are pled in a complaint.

22          Your Honor, pleadings in a complaint

23   have to be based on certain truthfulness or at

24   least circumstances which lead to the truthfulness

25   of pleadings, of allegations made in a complaint,

17

1  Your Honor.

2         And when these paragraphs are read

3  literally, it is obvious that these allegations

4  are totally false, Your Honor.

5         This infor... You can not say that you

6  were not able to buy a truck because you were

7  economically precluded, and they you went ten...

8  when you know that ten days before filing this

9  complaint you applied before Cooperativa de Caguas

10  and you bought a new 205 truck.  So you were not

11  economically precluded by GE.

12         It is impossible.  There is no way.

13  GE has verified the UCB, which is the credit

14  history, and there were two inquiries made as to

15  this client, as to this plaintiff.

16         One for Doral for which he qualified

17  and obtained a mortgage in December of the year he

18  filed this complaint.  And then also for

19  Cooperativa to buy this truck.

20         It is not true that he was

21  economically precluded, Your Honor.  And it is not

22  true that he could not buy a truck.

23         Even more, even in the remote instance

24  that he operated two trucks, and maybe he just

25  needed two trucks which were less than seven years

18

1    old.

2                      Your Honor, schedules filed in this

3    case have two vehicles, the 1997 truck and a 1993

4    Crown Victoria.

5                      Therefore, he did not have two trucks,

6    Your Honor.  He has been operating, he has not

7    been economically precluded, and that is totally

8    false.  And that is why we are moving to strike

9    these allegations, Your Honor.

10                     HONORABLE JUDGE CARLO:       Well,

11   the... Counsel, do you wish to respond?

12                     MR. PÉREZ-OBREGÓN:       Your Honor,

13   there is...

14                     HONORABLE JUDGE CARLO:       I take

15   that you are seeking reconsideration of the

16   Court's denial of your motion to strike, is that

17   what you are...

18                     MS. LANDRAU-RIVERA:       Yes, sir.

19                     HONORABLE JUDGE CARLO:       Okay.

20                     MR. PÉREZ-OBREGÓN:       There is such

21   a thing called "*latches*", Your Honor.  While it is

22   true the interrogatory over a year ago, Counsel

23   did request in writing a small compendium of what

24   my clients were going to testify, and we told them

25   that they would... she would be informed before

19

1    the trial.  Time passed and we forgot, Your Honor,

2    but Counsel did not remind us either, nor did she

3    remind the Court.

4            On February 24th this Court notified

5    the schedule of this hearing.  Counsel did not say

6    anything or did not require any... any of that

7    testimony until two days ago, Your Honor.  And

8    that is *latches*, Your Honor.

9            As far as the deposition is concerned,

10   that deposition was filed on April 28th, over a

11   year after the discovery had closed.

12           And that deposition was filed in

13   response to a letter sent by this counsel to

14   opposing counsel, whereby we requested that they

15   comply with this Court's order of February 2006.

16   No response was made.  The only response made was

17   a week afterwards when the deposition was filed.

18           There is no justification for that

19   deposition, Your Honor.

20           Your Honor, on this day, on this day,

21   my clients are not going to testify about any

22   economic  hardships that they had because of GE's

23   refusal to honor the discharge.

24           My clients are only going to testify

25   about the mental anguish and the suffering that

20

1    they experienced because of GE Capital refusal to

2    honor the discharge, Your Honor.

3                    MS. LANDRAU-RIVERA:      I if I

4    may...

5                    MR. PÉREZ-OBREGÓN:      As I stated,

6    Your Honor...

7                    HONORABLE JUDGE CARLO:      Okay, let

8    him finish.  Le him finish.

9                    MR. PÉREZ-OBREGÓN:      And as I

10   stated, Your Honor, Dr. Carmen Sanz was listed as

11   a witness way back in July 2005, opposing party

12   did not... was not interested in deposing her or

13   requiring any sort of testimony on her behalf.

14                    And she is here today, Your Honor,

15   just as we promised that she would be way back in

16   July of 2005.

17                    I think it is kind of late to request

18   that she be stricken from the list of witnesses.

19                    HONORABLE JUDGE CARLO:      Okay.

20   Counsel, anything else?

21                    MS. LANDRAU-RIVERA:      Yes, I am

22   sorry.  Your Honor, as to the... what GE here is

23   requesting is not that Debtors not sit down and

24   testify as to the damages, because we are here for

25   that.

1              What we are requesting is the

2      testimony be limited, Your Honor, to what is

3      specifically alleged in the Complaint.

4              And what was alleged in the Complaint,

5      Your Honor, is false.  And that is why we are

6      requesting that it be stricken, Your Honor.

7              That is what we are requesting, that

8      evidence as to the fact that they were

9      economically precluded and that they could not

10     obtain a new truck because they needed to operate

11     a truck that was less than seven years old, that

12     is what we are requesting that be stricken...

13             HONORABLE JUDGE CARLO:      Okay,

14     this is what...

15             MS. LANDRAU-RIVERA:       ...and

16     that...

17             HONORABLE JUDGE CARLO:      This is

18     what we are going to do, Counsel.  I've heard your

19     arguments and reconsideration.  I am going to

20     grant your reconsideration in part.  We are going

21     to allow the evidence to come in.

22             And after all the evidence is in you

23     can make your arguments, and then we'll decide

24     whether we are going to strike or whether we it's

25     relevant or not, okay?

22

1          MS. LANDRAU-RIVERA:      As to the...

2          HONORABLE JUDGE CARLO:      We'll

3    give you a chance to cross examine because you are

4    making allegations here as facts, so that needs to

5    be really put in evidence.

6          MS. LANDRAU-RIVERA:      As to the

7    psychiatrist, the issue is, Your Honor, that it

8    may have been announced, Your Honor.

9          It may...  A curriculum vitae could

10   have been sent, but the fact is that no emotional

11   damages have been claimed in the Complaint...

12          MR. PÉREZ-OBREGÓN:      Your

13          Honor,...

14          MS. LANDRAU-RIVERA:      That is

15   word.

16          MR. PÉREZ-OBREGÓN:      ...if the

17   Court reads the Complaint, it is broad enough to

18   cover emotional damages, Your Honor.

19          HONORABLE JUDGE CARLO:      I do

20   agree with Debtor that he can include emotional

21   damages, Counsel.  And also the evidence that

22   comes in, you can ask for a... you can ask as a

23   question of procedure to amend the pleadings in

24   any terms of the proceedings based on the evidence

25   that comes in to the record.

23

1              So he can not put his client on the

2     stand and whatever... and then ask that the

3     pleadings be amended to reflect what is said on

4     the record.

5              And I think that is procedure correct.

6     So we are going to allow the evidence of emotional

7     proceedings.

8              I think the Complaint is broad enough,

9     and after the evidence comes in you may renew your

10    Motion to Strike.

11             So your reconsideration is granted in

12    part, okay?

13             How many...  You say we still have

14    three witnesses...

15             MR. PÉREZ-OBREGÓN:      Three

16    witnesses, Your Honor.

17             HONORABLE JUDGE CARLO:      Who are

18    these witnesses?

19             MR. PÉREZ-OBREGÓN:      Mr.  Wilfredo

20    De Jesús-Rivera, the Debtor...

21             HONORABLE JUDGE CARLO:      Okay.

22             MR. PÉREZ-OBREGÓN:       ...the co-

23    petitioner, Sonia Hernández...

24             HONORABLE JUDGE CARLO:      Who?

25             MR. PÉREZ-OBREGÓN:      The Debtor

24

1    also, Sonia Hernández–Meléndez.  They are the

2    debtors in the case.

3                    HONORABLE JUDGE CARLO:        Right.

4                    MR. PÉREZ–OBREGÓN:        And the

5    psychiatrist, Dr. Carmen Sanz.

6                    HONORABLE JUDGE CARLO:        Dr.

7    Sanz.  Alright.  Who do you wish to put on first?

8                    MR. PÉREZ–OBREGÓN:        Don Wilfredo.

9                    HONORABLE JUDGE CARLO:

10   Wilfredo...

11                   MR. PÉREZ–OBREGÓN:        Also, Your

12   Honor, we have... we have the Interpreter here

13   this morning, Ms.  Patricia...

14                   HONORABLE JUDGE CARLO:        Alright.

15   So let's just get all witnesses up here and take

16   their oath at the same time.

17   Whereupon,

18                        **PATRICIA BECKERLEGE**

19   was duly sworn as the official interpreter for the

20   taking of the deposition:

21   Whereupon,

22                        **WILFREDO DE JESÚS**

23   was called as a witness and having been first been

24   duly sworn, was examined and testified as follows:

25                   HONORABLE JUDGE CARLO:        Alright.

25

1                       MR. PÉREZ–OBREGÓN:      Don

2          Wilfredo...

3                       HONORABLE JUDGE CARLO:      I need one

4                       minute.

5                       MR. PÉREZ–OBREGÓN:      Yes, Your

6          Honor...

7                       HONORABLE JUDGE CARLO:      ...okay,

8          to call my chambers and we'll take a short minute

9          break before we start.

10                      *Vamos a empezar en unos minutos.*

11         *Pueden sentarse.*

12                      CLERK:      Case 00801 Wilfredo De

13         Jesús–Rivera, Sonia Hernández, Adversary 04165.

14                      HONORABLE JUDGE CARLO:      Parties

15         ready?

16                      MR. PÉREZ–OBREGÓN:      Yes, Your

17         Honor.

18                      HONORABLE JUDGE CARLO:      First

19         witness, Counsel.

20                      MR. PÉREZ–OBREGÓN:      Yes.  As the

21         first witness is Mr.  Wilfredo De Jesús.

22                      TRUSTEE:      The Debtor in this case,

23         Your Honor.

24                      HONORABLE JUDGE CARLO:      Don

25         Jesús.  You may begin, Counsel...

1          MR. PÉREZ-OBREGÓN:      Thank you,

2     Your Honor.

3          HONORABLE JUDGE CARLO:      ...Mr.

4     Obregón.

5     Whereupon,

6                   **DIRECT EXAMINATION**

7     BY MR. PÉREZ-OBREGÓN:

8          Q   Please state your full name, Witness.

9          HONORABLE JUDGE CARLO:      We have a

10    little problem here with the speakers...

11          Okay.  You let me know, Court

12    Reporter, if any of the witnesses is not speaking

13    loud enough, okay?

14          COURT REPORTER:      Okay.

15          HONORABLE JUDGE CARLO:      Make sure

16    we get the record right. If you have any problem,

17    let me know.  Okay.

18          *Trate de hablar lo más claro posible,*

19    *dirigiéndose al micrófono para que se pueda*

20    *grabar. Gracias.*  You may...  Go ahead.

21          MR. PÉREZ-OBREGÓN:      Thank you,

22    Your Honor.

23    BY MR. PÉREZ-OBREGÓN:

24          Q      Witness, please state your full name.

25          A      Wilfredo De Jesús-Rivera.

27

```
1          Q          Please state your age.

2          A          59 years old.

3          Q          Where do you live?

4          A          In Bayamón.

5          Q          Please state your complete address.

6          A          Road 830, Santa Olaya Ward, Bayamón,

7    Puerto Rico.

8          Q          How long have you lived there?

9          A          Eighteen years.

10         Q          Are you married?

11         A          Yes, sir.

12         Q          What is your wife's name?

13         A          Sonia Hernández-Meléndez.

14         Q          How long have you been married?

15         A          Thirty years.

16         Q          Do you currently live with your wife?

17         A          Yes, sir.

18         Q          Do you have children?

19         A          Yes, sir.

20         Q          How many?

21         A          Three.

22         Q          Please state their names and ages.

23         A          Steve Romero, 34 years old; Wilfredo

24    Omar De Jesús-Hernández, 24 years old; Denise De

25    Jesús-Hernández, 21 years old.
```

28

1      Q      How many of your children currently

2   live with you?

3      A      One.

4      Q      Is your wife employed outside your

5   home?

6      A      No, sir.

7      Q      Witness, what is your occupation?

8      A      I am truck driver.

9      Q      How long have you been working as a

10   truck driver?

11      A      Forty years.

12      Q      Do you own your own truck or do you

13   work as an employee?

14      A      I have my own truck.

15      Q      Okay.  With whom do you currently

16   work?

17      A      With the Truck Drivers Union,

18   Cooperativa de Camioneros, Transporte.

19      Q      Okay.  Can you briefly explain to the

20   Court the nature of your relationship with

21   Cooperativa de Transporte de Camioneros?

22              MS. LANDRAU-RIVERA:      Your Honor,

23   we object to that.

24              HONORABLE JUDGE CARLO:      Grounds?

25              MS. LANDRAU-RIVERA:      On the same

1     grounds which we have brought that this

2     constitutes an amendment to the pleadings, Your

3     Honor, that was requested specifically in

4     discovery, and the contract with Plaintiff and

5     Cooperativa de Camioneros was timely requested in

6     discovery and was not provided to Defendants.

7                 HONORABLE JUDGE CARLO:     Your are

8     requesting that everything related to Cooperativa

9     be stricken from the record?

10                MS. LANDRAU-RIVERA:     Yes, sir.

11                HONORABLE JUDGE CARLO:     Any

12    relation to them...

13                MR. PÉREZ-OBREGÓN:     Your Honor,

14    may I post...

15                HONORABLE JUDGE CARLO:     Go ahead.

16                MR. PÉREZ-OBREGÓN:     Yes.  That

17    contract was sent to Counsel on May 10th, 2005...

18                HONORABLE JUDGE CARLO:     Do you

19    have a copy of this letter?

20                MR. PÉREZ-OBREGÓN:     Yes, I do,

21    Your Honor.

22                HONORABLE JUDGE CARLO:     It's a

23    letter of May 10th, 2005.  Do you have a copy of

24    it?

25                MR. SEGARRA-MIRANDA:     No, Your

1    Honor.

2              MR. PÉREZ-OBREGÓN:       I signed, and

3    I personally sent it, Your Honor.

4              MS. LANDRAU-RIVERA:       Your Honor,

5    again, and this attorney is under a specific duty

6    to state the truth before this Court.

7              Esso Standard Oil Company and

8    Cooperativa de Transporte y Carga, that evidence

9    was not provided to Defendants.

10             We do admit of having received the

11   Hacienda Tax Returns for 2002 and 2004.

12             But these contracts have specifically

13   requested time and time again.

14             We even requested a Manual Proceeding

15   of Rules and Procedures, Reglas y Reglamentos,

16   that this Cooperativa...  Cooperativa de

17   Transporte y Cargo may have, due to the

18   allegations in the Complaint.

19             And it was also not provided to us,

20   Your Honor.

21             HONORABLE JUDGE CARLO:      Did you

22   remember seeing this letter?

23             MS. LANDRAU-RIVERA:       I don't

24   recall seeing this letter...

25             HONORABLE JUDGE CARLO:       You never

31

1    received this letter?

2                    MS. LANDRAU-RIVERA:    ...what I do

3    recall is, specifically, and we have it here...

4                    MR. PÉREZ-OBREGÓN:    Your Honor, he

5    is...

6                    MS. LANDRAU-RIVERA:    ...was...

7                    MR. PÉREZ-OBREGÓN:    Your Honor, he

8    is only testifying as...

9                    HONORABLE JUDGE CARLO:    The

10   letter...

11                   MR. PÉREZ-OBREGÓN:    ...to where he

12   works.

13                   HONORABLE JUDGE CARLO:    One at a

14   time.  One at a time.  Let me...

15                   There is an objection to this line of

16   questioning and we want to hear it out.  Yes.

17                   MS. LANDRAU-RIVERA:    Your Honor,

18   we specifically, and we recall, that we

19   received...

20                   HONORABLE JUDGE CARLO:    Speak into

21   the microphone, Counsel.

22                   MS. LANDRAU-RIVERA:    Oh, sorry.

23   It's that I am looking for the document in order

24   to provide...

25                   HONORABLE JUDGE CARLO:    You may

1   sit down and look for it.

2                   MS. LANDRAU-RIVERA:       Thank you.

3   Your Honor, with the... we received the answer to

4   the Interrogatory, we did receive that, and with

5   that we received this document, which has been

6   reviewed and once and time again by this attorney,

7   Your Honor.

8                   And we do have... Yes, we do have the

9   statements, we have the Declaración de Volumen de

10  Negocios from the Municipality of Bayamón, we have

11  that before us.

12                  But we do not have a contract which

13  was timely requested and it has not been provided.

14   What we did... we did receive this, and we

15  received it with the Answer to Interrogatories,

16  which we also do have.  Yes, we do have that.

17                  HONORABLE JUDGE CARLO:      Okay.

18  What was the question again?

19                  Why don't you...

20                  I want to hear the question that was

21  objected to.

22                  Can you...

23                  Can we have this question repeated?

24                  MS. LANDRAU-RIVERA:       If I recall,

25  it was as to the...

33

1          HONORABLE JUDGE CARLO:      No, no,

2     let me hear it from the record.  The last

3     question, which is being objected to.

4               Are we on the record?  Okay.

5                    (Playback)

6          HONORABLE JUDGE CARLO:      The

7     question, as I understand it, is what is the

8     nature of his relationship, Debtor's relationship

9     with Cooperativa de Camioneros.

10         MR. PÉREZ-OBREGÓN:      That is

11    correct, your Honor.

12         HONORABLE JUDGE CARLO:      And you

13    said that was the question, right?

14         MR. PÉREZ-OBREGÓN:      That is the

15    question.

16         HONORABLE JUDGE CARLO:      Counsel

17    Noemí Landrau, you objected to that based on the

18    fact that you did not receive the contract from

19    the Cooperativa...

20         MS. LANDRAU-RIVERA:      Yes, Your

21    Honor...

22         HONORABLE JUDGE CARLO:      ...as part

23    of...  And that you requested it specifically,

24    right?

25         MS. LANDRAU-RIVERA:      Yes, we did.

1    And we object that, Your Honor, because he has

2    already stated that he is not an employee, that he

3    owns his own truck and that he works for himself.

4              And that is why we object that because

5    the best evidence was the... is the Contract in

6    order to examine that his relationship with

7    Cooperativa de Camioneros, and it was not timely

8    provided, Your Honor.

9              HONORABLE JUDGE CARLO:      No, we are

10   going to grant your objection in part.

11             The Cooperativa de Transporte y Carga,

12   the Contract itself, we are going to take your

13   word for it, even though there is a letter that

14   says that you received it, which were going to

15   keep here as an exhibit to these proceedings, the

16   letter of May 10th, 2005, mark it as ID...

17             MS. LANDRAU-RIVERA:      A copy of a

18   letter, Your Honor.

19             HONORABLE JUDGE CARLO:      A copy of

20   the letter, right.  From Mr. Pérez-Oregón, and Mr.

21   Pérez-Oregón has said that he sent that letter.

22             You say you have not received the

23   letter although you received some parts o it.  The

24   first two, but you did not received the Contracts.

25

1              And we granting your objection
2      regarding the Contract itself.
3              However, the Witness may testify of
4      his relationship, he just may not testify...
5              MS. LANDRAU-RIVERA:    If I may...
6              HONORABLE JUDGE CARLO:    ...on the
7      Contract.
8              MS. LANDRAU-RIVERA:    If I may,
9      Your Honor.
10             HONORABLE JUDGE CARLO:    Yes.
11             MS. LANDRAU-RIVERA:    And this
12     is... And the Court can see this.  Actually, you
13     can review it before...
14             Your Honor, we are denying that he...
15     that he sent it, and we are denying that we
16     received it, because we stand corrected.   That
17     letter says that those are the Income Tax Returns
18     for 2002 and 2004.
19             We never received 2004, what we have
20     here  is Income Tax for 2002, two copies actually,
21     and for 2000.  And this is all the evidence that
22     we have.
23             HONORABLE JUDGE CARLO:    Okay.
24             MR. PÉREZ-OBREGÓN:    Your Honor, if
25     Counsel didn't agree with she received, she had

36

1   time enough to state so.  That letter is of May

2   2005.

3                       MS. LANDRAU-RIVERA:      We never

4   received it.

5                       HONORABLE JUDGE CARLO:      We are not

6   going to get...  Counsel, first you said that you

7   had received the Tax Returns, now you say you

8   received different years Tax Returns.

9                       I don't think that is really

10  pertinent.  We are granting your objection

11  regarding the Contract itself.

12                      Witness may not testify as to the

13  Contract, but he can testify in general terms if

14  he works for Cooperativa de Transporte, as long as

15  he doesn't testify on the Contract.  We believe

16  the Contract...

17                      We believe you the Contract was not

18  produced.

19                      MS. LANDRAU-RIVERA:      Thank you,

20  Your Honor.

21                      HONORABLE JUDGE CARLO:      We are

22  going to return these to you and we are going to

23  keep the letter of Pérez-Oregón, May 10th, 2005.

24  Mark it as ID for Debtor.

25                      (Whereupon, the above-referenced

```
 1      document was marked as Identification for Debtor.)
 2                      HONORABLE JUDGE CARLO:      You may
 3      continue.
 4                      MR. PÉREZ-OBREGÓN:      Yes, Your
 5      Honor.
 6                      HONORABLE JUDGE CARLO:      The
 7      Witness may answer the question.
 8      BY MR. PÉREZ-OBREGÓN:
 9          Q        What is the nature of your
10      relationship with Cooperativa de Camioneros...
11      What is the name again?
12                      COURT INTERPRETER:      De Transporte
13      y Carga.
14                      MR. PÉREZ-OBREGÓN:      Thank you.
15      BY MR. PÉREZ-OBREGÓN:
16          A        I am an owner/partner of that company.
17          Q        Could you be more specific, please?
18      Could you...  Could you be...
19          A        I work on a basis that Cooperativa
20      has...
21                      MS. LANDRAU-RIVERA:      Your Honor,
22      we object...
23                      MR. PÉREZ-OBREGÓN:      He is not
24      testifying as to the contents of the Contract,
25      Your Honor.
```

38

1          MS. LANDRAU-RIVERA:      He is

2     asking...

3          HONORABLE JUDGE CARLO:      Let's

4     not... I want to make one thing clear.   One person

5     at the time, okay?

6          MR. PÉREZ-OBREGÓN:      Yes, Your

7     Honor.

8          HONORABLE JUDGE CARLO:      Let's

9     make this easy, because if not, we are going to be

10    here all weekend.          There is an

11    objection to what, the question or the answer?

12         MS. LANDRAU-RIVERA:      Your Honor,

13    there is a...

14         HONORABLE JUDGE CARLO:      And what

15    is the grounds?   Just state the grounds, not

16    arguments.

17         MS. LANDRAU-RIVERA:      The grounds

18    is, Your Honor, the same, that this... the

19    evidence was requested and he is testifying as to

20    the Contracts, and the Contracts were not

21    produced.

22         And GE is being forced to come into a

23    litigation in a state of not knowing how to defend

24    itself, Your Honor, in order to defend this... a

25    complaint...

39

1              HONORABLE JUDGE CARLO:       Okay.

2      Don't argue, just give me a basic reason, okay?

3              The objection is denied based on the

4      same ruling we gave before.

5              This Witness is not testifying on the

6      Contract itself, but he is testifying that is an

7      owner and partner of Cooperativa, and that is

8      admissible.

9              MS. LANDRAU-RIVERA:       Your

10     Honor,...

11             HONORABLE JUDGE CARLO:       You may

12     continue.

13             MS. LANDRAU-RIVERA:       Your

14     Honor...

15             HONORABLE JUDGE CARLO:       Yes.

16             MS. LANDRAU-RIVERA:       We...  If I

17     may?  We also requested, and he said that he was

18     *socio/dueño*, and that, if I understand correctly,

19     is owner and s*ocio*...

20             MR. PÉREZ-OBREGÓN:       Partner.

21             HONORABLE JUDGE CARLO:       Partner.

22             MS. LANDRAU-RIVERA:       Partner.  We

23     specifically requested, Your Honor, as to

24     Cooperativa de Camioneros the Rules and

25     Regulations in order for us to assess his... the

40

1    nature of his relationship with Cooperativa.

2                    And that was not received, Your Honor.

3    This line of questioning as to Cooperativa de

4    Camioneros, Your Honor, was... it was requested

5    that it timely be produced, and it was not

6    produced.

7                    And GE is being forced to come here

8    and cross examine a testimony for which it could

9    not prepare or adequately defend the

10   allegations...

11                   HONORABLE JUDGE CARLO:      Okay.

12   Counsel, I don't...

13                   MS. LANDRAU-RIVERA:      ...in...

14                   HONORABLE JUDGE CARLO:      I don't

15   want this sort of argument in objections, just

16   state the reasons for the objection in a clear and

17   concise way, if not, we'll never finish here,

18   okay?

19                   Grounds for the objection?  We are not

20   arguing...   We are not...  This is not a final

21   argument on the case.

22                   MS. LANDRAU-RIVERA:      Your Honor,

23   this is not the best evidence.

24                   HONORABLE JUDGE CARLO:      Not the

25   best evidence.      MS. LANDRAU-RIVERA:

41

1     And that is what...  And that is why we argue.

2                    MR. PÉREZ-OBREGÓN:      Your Honor...

3                    HONORABLE JUDGE CARLO:       That is

4     evidence.  Counsel...  Now, just one person here

5     to conduct this.   One person.  Not the best

6     evidence...

7                    MR. PÉREZ-OBREGÓN:      Your Honor...

8                    HONORABLE JUDGE CARLO:        Evidence.

9                    MR. PÉREZ-OBREGÓN:      Your Honor,

10    he is only testifying as to his personal knowledge

11    of his relationship with La Cooperativa de

12    Transporte y Carga de Camioneros.

13                    He is not testifying as to the details

14    of contracts, he is not testifying as to

15    liabilities or obligations of the contracts,

16    merely what he does with them.

17                    HONORABLE JUDGE CARLO:      I believe

18    that there is Counsel's right to objection is

19    denied.  The Witness may answer.

20                    MR. PÉREZ-OBREGÓN:      Okay.  I will

21    repeat the question.

22    BY MR. PÉREZ-OBREGÓN:

23         Q      Can you briefly explain to the Court

24    the nature of your relationship with Cooperativa

25    de Transporte y Carga de Camioneros, please?

42

1   A   I repeat it again, I am an owner and

2 partner of that company.

3   Q   Now, how does that work?

4   A   That is a company that renders service

5 by means of contracts to different companies.

6      If they need a person under one of

7 those contracts, Cooperativa de Camioneros will

8 assign that person to that area.

9      If that person is necessary in that

10 area, he will be utilized there.  If he is not

11 necessary, they will otherwise another area will

12 be searched for that person to work at.

13      If you are in agreement with the work

14 that has been assigned to you, then you remain

15 there performing it.

16   Q   Thank you, Witness.  Witness, you own

17 a truck, don't you?

18   A   Of two trucks.

19   Q   What model and what years are your

20 trucks?

21   A   Peterbuilt...

22      HONORABLE JUDGE CARLO:  I am

23 sorry, I didn't hear that.

24      COURT INTERPRETER:  Peterbuild.

25      HONORABLE JUDGE CARLO:

43

1      Peterbuilt.

2                          COURT INTERPRETER:     I am waiting

3      for him to mention both and then...

4                          HONORABLE JUDGE CARLO:     Okay.

5      BY MR. PÉREZ-OBREGÓN:

6          A        A Peterbuilt 1997, and 2005 Kenworth.

7          Q        When did you acquire the 2005

8                   Kenworth?

9                          COURT INTERPRETER:     Kenwood or

10     Kenworth?   ¿Cómo se escribe?

11                         WITNESS:       Kenworth.

12     BY MR. PÉREZ-OBREGÓN:

13         Q        When did you acquire the 2005

14                  Kenworth?

15         A        In June.

16                         COURT INTERPRETER:     Correction,

17     for the record and for the Court, it is Kenwood.

18                         HONORABLE JUDGE CARLO:

19     Kenworth.

20                         COURT INTERPRETER:     K-e-n-w-o-r-t-

21     h.

22                         HONORABLE JUDGE CARLO:     Okay.

23     BY MR. PÉREZ-OBREGÓN:

24         Q        When did you visit this counsel's

25     office to explain about the lawsuit you were

1    interested in filing against GE Capital?

2        A        In May.

3        Q        What down payment did you give for

4    that Kenworth Truck that you have?

5        A        None.

6                 MR. PÉREZ-OBREGÓN:        Counsel,...

7    BY MR. PÉREZ-OBREGÓN:

8        Q        Witness, what model and year did you

9    state the other truck was?

10       A        A 1997 Peterbuilt.

11                MR. PÉREZ-OBREGÓN:        Your Honor,

12   may the record reflect that I have shown opposing

13   counsel Plaintiff's Exhibit number one for

14   identification.

15                HONORABLE JUDGE CARLO:        Exhibit

16   one.

17                MS. LANDRAU-RIVERA:        Your Honor,

18   if I may.  In order to save time, because this is

19   an ID.  If we can introduce this...

20                HONORABLE JUDGE CARLO:        You have

21   no objection that Exhibit one be...

22                MS. LANDRAU-RIVERA:        No.

23                HONORABLE JUDGE CARLO:

24   ...introduced...  You want to introduce it in

25   evidence?

45

1              MR. PÉREZ-OBREGÓN:        Yes, Your

2    Honor.

3              HONORABLE JUDGE CARLO:        Okay.

4    Submitted as number one for Debtor.

5              (Whereupon, the obove-referenced

6    document was marked as Exhibit 1 for Debtor.)

7    BY MR. PÉREZ-OBREGÓN:

8        Q        Witness, can you tell the Court what

9    you have before you?

10       A        This is the title to my truck.

11       Q        What vehicle is stated on that Title

12   Certificate?

13       A        1997 Peterbuilt.

14       Q        Does it state if the vehicle has a

15   lien?

16       A        Yes.

17       Q        Who does it state is the lien holder?

18       A        GE Capital.

19       Q        Was GE Capital informed, included, in

20   your bankruptcy case as a creditor?

21       A        That is so.

22             MS. LANDRAU-RIVERA:        Your Honor,

23   if I may?  In order again for... to expedite the

24   proceedings, we recognize that... all of those

25   facts have already been adjudicated by this Court

46

1      and they were already brought before the attention

2      of the Court.   We are...

3                      HONORABLE JUDGE CARLO:      Why do we

4      have to get into this...

5                      MS. LANDRAU-RIVERA:      ...here

6      on...

7                      HONORABLE JUDGE CARLO:      ...line

8      of the relationship between GE, if this has been

9      decided by the Court already?

10                     MR. PÉREZ-OBREGÓN:      Very well,

11     Your Honor.

12                     HONORABLE JUDGE CARLO:      It seems

13     to be going into a confirmation hearing and you

14     are more than just a hearing on damages.   I

15     thought we weren't talk about that.

16                     MR. PÉREZ-OBREGÓN:      Very well,

17     Your Honor.

18     BY MR. PÉREZ-OBREGÓN:

19          Q       Witness, where is the truck now?

20          A       At my home.

21          Q       How many times have you used it since

22     the year 2004?

23          A       Never.

24          Q       Why not?

25          A       Because it has a lien on it, and I can

47

1        not use it in other place, and the Public Service

2        Commission won't give me an authorization to

3        utilize it.

4            Q        After you received your discharge in

5        December of 2003, didn't you request from GE

6        Capital it erase the lien?

7            A        Yes, that is so.

8            Q        When did you request it the first

9                     time?

10               MS. LANDRAU-RIVERA:        Your Honor,

11       if I may?  Also...

12               HONORABLE JUDGE CARLO:        Yes.

13               MS. LANDRAU-RIVERA:        ...in order

14       to expedite.  This has already also been

15       adjudicated, it has already... that this Court has

16       already taken knowledge of the fact that he went

17       and that he requested it, and that we... it was

18       not provided.   We are here to hear what damages

19       occurred.

20               HONORABLE JUDGE CARLO:        Counsel.

21               MR. PÉREZ-OBREGÓN:        Your Honor, I

22       would like him to explain to the Court his

23       experience at GE Capital, what he went to have

24       that title... that lien erased.

25               HONORABLE JUDGE CARLO:        *Veo*

**JAMES ROHAN REPORTERS**
Tel. 725-7203 Cell 329-0114 Email  rohanmav@aol.com
P.O. Box 16062, Santurce, P.R. 00908

48

1      *que...*

2                          MR. PÉREZ-OBREGÓN:        And how that

3      affected him.

4                          HONORABLE JUDGE CARLO:        For what

5      purpose?

6                          MR. PÉREZ-OBREGÓN:      We... Our

7      purpose is to show emotional and mental damage,

8      Your Honor.

9                          HONORABLE JUDGE CARLO:        Counsel.

10                         MS. LANDRAU-RIVERA:        And he may

11     stated what were the emotional damages, he can go

12     ahead and state them.  That is what we are here

13     for.

14                         HONORABLE JUDGE CARLO:        But we

15     are going to allow the line of questioning.  The

16     objection is denied.

17                         But don't go too far into the facts of

18     the case.  Whatever is necessary to introduce the

19     issue of damages and develop the issue of damages

20     is allowed.

21                         But let's see how far we go on this.

22     Go ahead.

23     BY MR. PÉREZ-OBREGÓN:

24         Q        Witness, were you given any reason why

25     GE Capital refused to erase their lien?

49

1        A        They allege that I have a debt with

2   them.

3        Q        How did that make you feel?

4        A        I was angry at that moment.  I felt

5   bad because I felt that I was harassed.

6        Q        How many times did you go to the

7   office of GE Capital to have that lien erased?

8        A        I went there on four occasions.

9        Q        What other action did you take, if

10  any, to have GE Capital erase that lien?

11       A        Well, I had to go to an attorney.

12       Q        What evidence did you submit to GE

13  Capital to have them erase that lien?

14       A        Well, they asked me for evidence, so I

15  went to the Cooperativa's offices and I looked up

16  the evidence.  We have all the evidence over at

17  the office, the checks with which payment was

18  issued.

19       Q        How many times did you go to the

20  office...  I am sorry.  And each time you went,

21  how would you characterize the way you were made

22  to feel?

23       A        Badly.  They made me feel very badly

24  because they really didn't deal with me as they

25  should have.

50

1          MR. PÉREZ-OBREGÓN:       Your Honor, we

2     have submitted as Exhibit two a copy of a check

3     from Royal Alliance in the amount of $1,166.00

4     dollars.   We have alleged in the Complaint that

5     they... that GE Capital kept this check, post this

6     charge, and...

7          HONORABLE JUDGE CARLO:       No, no,

8     no, don't argue, Counsel.   What do you want to do

9     with that piece of evidence?

10          MR. PÉREZ-OBREGÓN:       Yes, I just

11     want to submit it into evidence.

12          HONORABLE JUDGE CARLO:       Submit it

13     to evidence.   Exhibit two.   Any objection?

14          MS. LANDRAU-RIVERA:       No, Your

15     Honor, that...

16          HONORABLE JUDGE CARLO:       Check

17     from Royal....

18          MS. LANDRAU-RIVERA:       And that

19     check has already been returned to brother

20     counsel...

21          HONORABLE JUDGE CARLO:       No, no,

22     just any objection?

23          (No response)

24          HONORABLE JUDGE CARLO:       No.

25     Okay.   Check is admitted as Exhibit two, it will

1    be Debtor's two.

2                    (Whereupon, the above-referenced

3    document was marked as Exhibit 2 to the Debtor.)

4    BY MR. PÉREZ-OBREGÓN:

5        Q        Witness, after you were told by GE

6    Capital that the lien would not be erased, how did

7    you feel about your bankruptcy case?

8        A        Well, I felt that it was not worth the

9    trouble to file bankruptcy because I felt myself

10   in a situation that was worse than the one before.

11   I was like going backwards.

12       Q        Witness, changing the line of

13   questioning a moment.  You stated beforehand that

14   you have been working as a truck driver for forty

15   years.

16       A        That is so.

17       Q        How well would you say you know trucks

18   and the market value of trucks in Puerto Rico?

19                    MS. LANDRAU-RIVERA:        Your Honor,

20   we object that.

21                    HONORABLE JUDGE CARLO:        Grounds?

22                    MS. LANDRAU-RIVERA:        It is

23   specifically what was denied by this Court in the

24   supplemental pleadings as to the value of trucks.

25                    HONORABLE JUDGE CARLO:        Well,

52

1    where are you heading with this type of...  These

2    are very general, speculative, question here,

3    Counsel.   What... the value of trucks in Puerto

4    Rico....  What is the story here?

5              MR. PÉREZ-OBREGÓN:      I wish to

6    show the Court Witness' knowledge of trucks and

7    their values, Your Honor.

8              HONORABLE JUDGE CARLO:      For what

9    purpose?

10              MR. PÉREZ-OBREGÓN:      For the

11    purpose of him stating what the value of that

12    truck was in 2004.

13              HONORABLE JUDGE CARLO:      Counsel?

14              MS. LANDRAU-RIVERA:      Your Honor,

15    he is not an expert witness nor an appraiser, nor

16    is he a dealer, he is not announced also...

17              HONORABLE JUDGE CARLO:      Well,

18    we... the Bankruptcy Court generally held that

19    owners of properties or... can testify, so we are

20    going to allow the answer.  Let's not get too far

21    on this.

22              We are going to allow generally to see

23    if he knows in general the values, but we

24    understand he is not a valuation expert.  But the

25    fact that he owns... he's owned trucks over his

53

1    life, he may testify as to what he thinks the

2    value of...  The Court might give it whatever

3    weight is necessary, if it's relevant.

4            Let's see where it goes, okay?

5            MS. LANDRAU-RIVERA:     In order to

6    save time, Your Honor,...

7            HONORABLE JUDGE CARLO:     Yes.

8            MS. LANDRAU-RIVERA:     ...the

9    Contract specifically... the Contract which was

10    included with the Proof of Claim and which is in

11    the Court's records, reflects how much it was

12    worth at the time of...

13            HONORABLE JUDGE CARLO:     We know

14    that.  We have seen the record, Counsel.  But we

15    will see what the Witness has to say.  He may

16    be... he may know more than the contract, let's

17    see.  Go ahead.

18    BY MR. PÉREZ-OBREGÓN:

19       Q       Witness, what is the...

20            HONORABLE JUDGE CARLO:     Or less.

21    BY MR. PÉREZ-OBREGÓN:

22       Q       Witness, what was the value of that

23    truck in 2004?

24       A       $70,000.00 dollars.

25       Q       And what did you hope to do with

54

1    that... the value of that truck?

2        A        Well, I was hoping to give it in as

3    trade-in at that moment.  Part of that money was

4    going to come from the trade-in, and the rest of

5    the money was going to be coming from some money

6    that I was going to be getting to make some

7    repairs to my home.

8            Also some money was going to go

9    towards my daughter's studies, and a down payment

10   for a vehicle for my family to be able to

11   transport itself, because we don't have a car

12   right now.

13       Q        Were you able to do it?

14       A        No, sir.

15       Q        Why not?

16       A        Because I did not have the title for

17   the truck, so I couldn't do anything with the

18   truck.

19       Q        How did the inability to fulfill your

20   plans affect you?

21       A        It destroyed me emotionally because I

22   really wasn't able to do what I wanted to do.

23       Q        How has it affected your relationship

24   with your wife?

25       A        Very much.

55

1        Q       What problems, if any, have you had

2    with any family members as a result of your

3    feelings?

4        A       A lot.

5        Q       Can you please explain to the Court

6    any specifics?

7        A       I had problems with my eldest son.  It

8    got to the point where it became difficult for me.

9    I kicked my children out of home.  And I fight

10    with my wife every day.  I argue with her every

11    day.  It is impossible for me to do.

12        Q       Witness, did you ever have any

13    problems of this sort before the incident with GE

14    Capital?

15        A       Never.

16        Q       Witness, do you smoke or drink?

17        A       Never.

18        MS. LANDRAU-RIVERA:    Your

19    Honor,...

20        HONORABLE JUDGE CARLO:    Counsel.

21        MS. LANDRAU-RIVERA:    ...we are

22    objection his evidence on the grounds that it is

23    not, and we sustain this, for purposes of... of...

24        HONORABLE JUDGE CARLO:    It is not

25    what?

1              MS. LANDRAU-RIVERA:      That it is

2      not part of the pleadings, and it is not what was

3      pled, Your Honor.

4              HONORABLE JUDGE CARLO:

5      Alright...

6              MS. LANDRAU-RIVERA:      Emotional

7      damages were not pled in the Complaint.

8              HONORABLE JUDGE CARLO:      Alright.

9      We will take that into consideration, Counsel,

10     after we hear the evidence.  We are not going to

11     make a determination as to that right now.

12             Initially we believe that though the

13     Complaint alleged damages in pretty general terms,

14     and also used the word "punitive damages", did not

15     used the word "emotional".  I agree with you, but

16     did use "damages" in more than one place in the

17     Complaint.

18             And also there is, under the rules of

19     evidence, it is allowed to amend the pleadings

20     according to the testimony of the plaintiff on the

21     stand.  But we are not going to make a ruling

22     right now, we'll wait until de end of the trial,

23     okay?

24             MS. LANDRAU-RIVERA:      Okay.

25             HONORABLE JUDGE CARLO:      Go ahead.

```
1              MR. PÉREZ-OBREGÓN:        Yes, Your

2    Honor.

3    BY MR. PÉREZ-OBREGÓN:

4         Q       Witness, where is that truck right

5    now, the 1997 Peterbuilt with the GE Capital lien?

6    Where is it?

7         A       In the yard of my home.

8         Q       Is it fair to say that you see it

9    every day?

10         A       That is so.

11         Q       What do you feel when you see it?

12         A       Anger.

13         Q       Are you currently taking any

14   medication?

15         A       Yes, sir.

16         Q       What medication are you taking?

17         A       Zoloft, Transen, Cozar.

18         Q       Who prescribed it?

19         A       The Cozar and the Transen was

20   prescribed by Dr. Sanz.  And the Cozar was

21   prescribed by Dr. Iván Ramírez, an internal

22   medicine specialist.

23         Q       Witness, if you had a dollar amount on

24   the mental anguish caused by GE Capital's refusal

25   to honor your Chapter 13 discharge...
```

58

1           MS. LANDRAU-RIVERA:       Your Honor,

2     we object....

3  BY MR. PÉREZ-OBREGÓN:

4       Q        ...what would...

5           MS. LANDRAU-RIVERA:       ..again.

6           HONORABLE JUDGE CARLO:       Let

7     the...  Before you object, let him finish the

8     question.  Could you repeat that question again?

9           MR. PÉREZ-OBREGÓN:       Yes.

10 BY MR. PÉREZ-OBREGÓN:

11      Q        If you had to put a dollar amount on

12    the mental anguish caused by GE Capital's refusal

13    to honor your Chapter 13 discharge, what would

14    your estimate be?

15          MS. LANDRAU-RIVERA:       We object,

16    Your Honor, that is...

17          HONORABLE JUDGE CARLO:       Grounds?

18          MS. LANDRAU-RIVERA:       ...not pled

19    in the Complaint, Your Honor.  And we request that

20    a standing objection be allowed for the rest of

21    the testimony as to the emotional damages because

22    they were not pled in the Complaint, they are not

23    part of that Complaint, and that is the

24    testimony... part of the testimony that he is

25    bringing in Court.

1        HONORABLE JUDGE CARLO:      The

2    objection, the same...  It is the same objections

3    you had before, the same ruling applies.

4        We are going to allow the evidence to

5    make a determination after the conclusion of the

6    cross examination and the conclusion of the

7    evidence.

8        MR. SEGARRA-MIRANDA:      Your

9    Honor,...

10        HONORABLE JUDGE CARLO:      Yes.

11        MR. SEGARRA-MIRANDA:      ...not to

12    be interrupting, the standing objection as to...

13        HONORABLE JUDGE CARLO:      Anything

14    that has to do with emotional damages.

15        MR. SEGARRA-MIRANDA:      Emotional

16    damages...

17        HONORABLE JUDGE CARLO:      And the

18    Court is going to allow the Witness to finish his

19    testimony, is going to allow the cross

20    examination, and we'll make a determination as the

21    emotional damages, whether it should or should not

22    be stricken from the record at that conclusion of

23    the hearing.

24        MR. SEGARRA-MIRANDA:      Yes, and

25    also the questions with dollar amount, is that the

1    Witness is not being announced as an expert in any
2    field.
3                We also have that objection, as to any
4    testimony as to dollar amounts because he is not
5    an expert.
6                HONORABLE JUDGE CARLO:        Okay.
7                CLERK:      Your name for the record?
8                MR. SEGARRA-MIRANDA:        Wilfredo
9    Segarra, for GE.
10                HONORABLE JUDGE CARLO:        The
11    Witness may answer the question.  The objections
12    have been addressed.
13                MS. LANDRAU-RIVERA:        Your Honor,
14    we object also.  That is speculative and very
15    ambiguous.
16                HONORABLE JUDGE CARLO:        We
17    believe the Court has the discretion to examine
18    the evidence as presented, even though it is
19    speculative.
20                We'll give it as close to the weight
21    of the matter, rather than the admissibility, so
22    the admission is denied.  You may answer.
23    BY MR. PÉREZ-OBREGÓN:
24        A        There is no money that will pay for my
25    health or that of my wife's or of my children.

1          Q          Thank you.  Finally, Witness, if you
2     had to trade in, or if you had to sell your 1997
3     Peterbuilt Truck at this very moment, how much
4     money would you say you would receive for it?
5                    MS. LANDRAU-RIVERA:          Your Honor,
6     objection.  Stands as to the fact that he is not
7     an expert witness.
8                    HONORABLE JUDGE CARLO:          Objection
9     is noted.  We have said that he may testify as an
10    owner of a property, so he may testify as to the
11    value, so you may answer.
12    BY MR. PÉREZ-OBREGÓN:
13         A          At the most forty-five thousand
14    ($45,000.00) dollars.
15         Q          Thank you.
16                    MR. PÉREZ-OBREGÓN:          No more
17    questions, Your Honor.
18                    HONORABLE JUDGE CARLO:          No more
19    questions.  The cross examination.
20                    MR. SEGARRA-MIRANDA:          Yes.  Yes,
21    Your Honor.
22                    MS. LANDRAU-RIVERA:          Yes, Your
23    Honor.
24                    HONORABLE JUDGE CARLO:          Landrau.
25    Whereupon,

62

**CROSS EXAMINATION**

BY MS. LANDRAU-RIVERA:

Q        Good morning, Mr. De Jesús.  Mr. De Jesús, when did you file for bankruptcy?

A        In 2001.

Q        Do you recall the month?

A        I don't remember exactly.

Q        Could it have been in December 2000?

A        It could have been.

Q        Yes, it could have been December 2000?

A        It could have been.

Q        Yes or no?

A        Yes.

MR. PÉREZ-OBREGÓN:        Objection, Your Honor, where are we going with this line of questioning?

The petition date stands as a matter of record.

MS. LANDRAU-RIVERA:        No problem. Then this Court notes that it filed on the date that it was filed.

HONORABLE JUDGE CARLO:        What is the purpose of this questioning, Counsel?

The record speaks for itself.  What is the date that it was filed?

63

1          MS. LANDRAU-RIVERA:       Your Honor,

2     he testified as to values, and he testified as to

3     damages and how was his state of mind before, and

4     that is what we are trying establish.

5          HONORABLE JUDGE CARLO:       Okay.

6     What else?

7          MS. LANDRAU-RIVERA:       His state

8     of mind before the petition...

9          HONORABLE JUDGE CARLO:       You may

10    question him, but I just wanted...

11         MS. LANDRAU-RIVERA:       ...and time

12    is important as to that.

13         HONORABLE JUDGE CARLO:       ...to

14    know what... what the reason was.  Go ahead.

15    BY MS. LANDRAU-RIVERA:

16    Q       Do you recall what vehicles did you

17    have at the time of the filing of the Petition?

18    A       Yes.

19    Q       Please state them.

20    A       I had a Grand Marquis, a 1993 Grand

21    Marquis, and a 1988 Nissan.

22    Q       Any other vehicles?

23    A       No.

24    Q       There were no other vehicles

25    registered in your name at the time of the filing

64

1    of the Petition?

2         A        There was another vehicle that was in

3    my name, that was my son's, but that did not

4    belong to me, that belonged to my son.

5         Q        What vehicle was that?

6         A        A 1998 Honda Prelude.

7         Q        Can you repeat that?  I am sorry, I am

8    having trouble listening.

9         A        A 1998 Honda Prelude.

10        Q        1998?

11        A        Yes.

12        Q        At the time of the filing of the

13   Petition, was the 1997 Peterbuilt in your name?

14        A        Of course.

15        Q        So if I would go to the Department of

16   Transportation and look up what is... or who is

17   the owner of that 1997 Peterbuilt, your name will

18   come up?

19        A        Well, of course.

20             MS. LANDRAU-RIVERA:        Now, I would

21   like to bring to the attention Schedule "A", it

22   was filed with the Petition.  Schedule "B", I am

23   sorry.  Schedule "B", which lists the personal

24   property of Debtor.

25             MR. PÉREZ-OBREGÓN:        I am sorry,

1    Your Honor, what schedule is that?

2                    MS. LANDRAU-RIVERA:        "B".   "B",

3    like in boy.

4                    MR. PÉREZ-OBREGÓN:        Your Honor,

5    I would like know what this questioning has to do

6    with the direct interrogation, the Direct

7    Examination given to the Debtor?

8                    HONORABLE JUDGE CARLO:        Counsel,

9    you wish to respond?  There is an objection

10   apparently to this line of questioning on the

11   vehicle...

12                   MS. LANDRAU-RIVERA:       Brought for

13   the purposes of rebutle, Your Honor.

14                   HONORABLE JUDGE CARLO:      I am

15   sorry?

16                   MS. LANDRAU-RIVERA:       Brought for

17   the purposes of rebutle and to attack the

18   credibility of the Witness, Your Honor.  This is a

19   cross examination.

20                   HONORABLE JUDGE CARLO:       You may

21   continue, Counsel.  We believe that this is

22   relevant and material.  Plus the fact that on the

23   Direct Examination the Witness testified that

24   he... about the vehicles that he lacked, owned, or

25   did not own.  Go ahead.

1    BY MS. LANDRAU-RIVERA:

2         Q        Mr. De Jesús, we are going to show you

3    a document.   Do you recognize that document, Mr.

4    De Jesús?

5         A        It lists two properties which are

6    mine.

7         Q        Can you state for the record what are

8    those properties which you state to be yours?

9         A        A 1997 Peterbuilt and a 1993 Mercury

10   Grand Marquis.

11        Q        The 1988 Nissan, does it appear on

12   that Schedule?

13        A        No.

14        Q        Was an Honda Prelude 1998, does it

15   appear in that Schedule?

16        A        No, because that was not my car, it

17   was my son's.

18        Q        And at the time, was your son...

19   Which one of your sons was the owner that you

20   state or the one that used the Honda Prelude 1998?

21        A        The eldest one.

22        Q        Which at the time of filing bankruptcy

23   was how old?

24        A        Twenty-two, twenty-one or twenty-two

25   years old.

67

1        Q        You stated that he now is thirty-four

2   years old?

3        A        That is so.

4        Q        So if this was six years ago, could he

5   have been twenty-eight?

6        A        No.

7        Q        No?  And it is not possible that he

8   was twenty-seven?

9        A        No.

10       Q        There is no way that he could have

11  been twenty-seven or twenty-eight when you filed

12  for bankruptcy?

13       A        No, I filed in 2001.

14       Q        Okay.  And you do state that he is

15  thirty-four now?

16       A        Yes.

17       Q        Now, Mr. De Jesús, did you have an

18  opportunity to review the Complaint that filed

19  against General Electric with your attorney?

20       A        I don't remember.

21       Q        You never discussed the contents of

22  the Complaint with your attorney?

23       A        Well, yes.

24       Q        Did you have an opportunity to review

25  it before it was filed?

68

1      A       Well, I was in his office.

2      Q       The question was if you had the

3    opportunity to review the Complaint before it was

4    filed?

5      A       Well, yes, because I was present when

6    he was telling me about the Complaint.

7      Q       So you did review the Complaint before

8    it was filed?

9      A       Well, he gave it to me so that I would

10   read it.

11     Q       And you state... And you sustain

12   yourself that everything that is said in the

13   Complaint was truth?

14     A       Yes.

15     Q       And in that Complaint you state that

16   you were not able economically to acquire a newer

17   model, a newer model from the 1997 Peterbuilt

18   Truck.       A       Well,...

19     Q       Yes or no?

20     A       Well, yes.

21     Q       And the fact is that you did testify

22   that in June 2004 you did buy a new 2005 Kenworth

23   Truck, yes or no?

24     A       That is so.

25     Q       And you were qualified financially by

69

1      Cooperativa de Caguas to buy that truck?

2          A        Yes, but I paid...

3          Q        Yes or no?

4          A        Yes, but I paid interests.

5          Q        Are you up to date on those payments

6      to the Cooperativa de Caguas?

7          A        That is so because that is being paid

8      from the payroll.

9          Q        And you are using that truck for your

10     work with Cooperativa de Camioneros?

11         A        That is so.

12         Q        And that truck you have been using

13     since you bought to work with Cooperativa de

14     Camioneros?

15         A        Are you talking about the Kenworth

16     one?

17         Q        Yes, yes.

18         A        Yes.

19         Q        And, Mr. De Jesús, during the pendency

20     of the bankruptcy, were you also working with

21     Cooperativa de Camioneros?

22             COURT INTERPRETER:        Excuse me, could

23     you repeat?

24     BY MS. LANDRAU-RIVERA:

25         Q        During the pendency of the bankruptcy

70

1 proceedings, the normal bankruptcy proceedings,

2 were you also working with Cooperativa de

3 Camioneros?

4   A  That is so.

5   Q  What truck did you use during the

6 pendency of the proceedings?

7   A  The Peterbuilt.

8   Q  So you have always continued to work

9 for Cooperativa de Camioneros, is that correct?

10   A  Well, that truck had an accident and I

11 was unemployed during three months.

12   Q  But you have always had worked with

13 Cooperativa de Camioneros, yes or no?

14   A  Yes.

15   Q  Mr. De Jesús, to your counsel's

16 questions you stated that you wanted to... I

17 withdraw that question.

18     Now, you stated to questions from

19 brother counsel that the 1997 Peterbuilt that you

20 have it in your home, is that correct?

21   A  That is so.

22   Q  And that you stated that you could not

23 use it because it has a lien.

24   A  Yes.

25   Q  Now, at the moment of the filing for

71

1      bankruptcy in 2000 or 2001, as you say, did that

2      truck have a lien?

3           A       Yes.

4           Q       And did you have all of the permits to

5      operate it?

6           A       Of course.

7           Q       And you continued to operate it?

8           A       Yes.

9           Q       And did the fact that it had a lien

10     towards GE affect you in any way?

11          A       No.

12          Q       And you could have obtained your

13     permit with the Public Service Commission?

14          A       At that moment I could.

15          Q       So the vehicle... Even...  The

16     vehicle after you received the discharge still

17     appears in your name, is that correct?

18          A       Are you talking about the license for

19     the truck?

20          Q       Yes, yes.

21          A       Yes.

22          Q       And it still could be operated?

23          A       Yes.

24          Q       Now...

25                  HONORABLE JUDGE CARLO:       Counsel,

72

1           are you talking about... what specific time

2           and what specific truck?   Because these

3           questions and answers are...

4                     MS. LANDRAU-RIVERA:        Okay.

5                     HONORABLE JUDGE CARLO:

6      ...confusing.

7                     MS. LANDRAU-RIVERA:      We are

8      talking about...

9                     HONORABLE JUDGE CARLO:       So we are

10     talking of different vehicles and different times,

11     is it after the bankruptcy, part of the

12     bankruptcy, if not, we are totally lost here.

13                     MS. LANDRAU-RIVERA:        Okay.

14     BY MS. LANDRAU-RIVERA:

15          Q         Mr. De Jesús, the 1997 Peterbuilt,

16     after the bankruptcy...  Do you understand what I

17     am saying?

18          A         Okay.

19          Q         No, after the discharge.  *Luego del*

20     *descargo.*

21          A         Can you ask the question again,

22     please?

23          Q         Now, in 2004 and 2005, was this truck,

24     1997 Peterbuilt, in your name?

25          A         Yes, that is so.

73

1          Q       Okay.  And that truck could be used?

2          A       Yes.

3                  MS. LANDRAU-RIVERA:       Is that

4      clear for the Court?

5                   Which...  What time and what truck.

6                  HONORABLE JUDGE CARLO:       Yes.

7      Thank you.

8                  MS. LANDRAU-RIVERA:       Excuse me,

9      Your Honor, the Translator is making some kind of

10     remark.  And we have not translated any...

11     anything for him.

12                 COURT INTERPRETER:       You know, I

13     am making remarks to him because he does not know

14     English, and when he looks at me I know he doesn't

15     know.

16                 MR. SEGARRA-MIRANDA:       Well,

17     Counsel, you should  ask the...

18                 MS. LANDRAU-RIVERA:       Your

19     Honor...

20                 MR. SEGARRA-MIRANDA:

21     ...Translator not to speak into the ear of the

22     Witness.

23                 COURT INTERPRETER:       He only hears

24     from one ear, sir.

25                 HONORABLE JUDGE CARLO:       Wait...

1    What is...

2                    MS. LANDRAU-RIVERA:        He is deaf

3    from the other

4     ear.

5                    HONORABLE JUDGE CARLO:        What

6    was the instruction you were giving?  To what...

7                    COURT INTERPRETER:        No, no, I

8    was not giving him an instruction, I was telling

9    you that she was talking about the post bankruptcy

10   thing because when he looks at me...  He told me

11   that if he doesn't understand, he'll look at me

12   and he can not hear from this ear.  He can only

13   hear from the other ear.

14                   HONORABLE JUDGE CARLO:        Oh.

15                   COURT INTERPRETER:        So that is

16   why I am whispering to him.  It is not that I am

17   trying to get close to him or anything...

18                   HONORABLE JUDGE CARLO:        Okay.

19                   MR. SEGARRA-MIRANDA:        Your

20       Honor....

21                   COURT INTERPRETER:        He is deaf

22   from this ear.

23                   MR. SEGARRA-MIRANDA:        Wilfredo

24   Segarra, for GE Capital.  In order to preserve the

25   proceedings, Your Honor, we request that the

1     Translator only translate, and not make any other

2     comments or speak to the Witness.

3                    HONORABLE JUDGE CARLO:        Okay.

4                    MR. SEGARRA-MIRANDA:          She is

5     only there to translate, Your Honor.

6                    HONORABLE JUDGE CARLO:        Well, I

7     think the... I agree with the comment made with

8     the Translator, we understand.  If you have any

9     problem or the Witness has any problem, and please

10    translate this to him, understanding that he

11    should address the Court and that a question to be

12    repeated again...

13                    COURT INTERPRETER:      Okay.

14                    HONORABLE JUDGE CARLO:        But

15    let's not...  Let's do everything for the record.

16    Can you tell him that?

17                    For the record again, can you put now

18    in English now what you told him?

19                    COURT INTERPRETER:      Oh, I am

20    sorry, okay.  For the record, the Judge has

21    requested that when you don't understand something

22    or you haven't heard well, instead of looking at

23    me and asking me to repeat it to you, or to

24    explain, please look at the Judge and ask the

25    Judge to explain it or repeat it again, and then

1    it will repeated or explained to you.

2                      HONORABLE JUDGE CARLO:        Okay.

3    You may continue.

4    BY MS. LANDRAU-RIVERA:

5        Q       Mr. De Jesús, vehicles with liens are

6    sold every day.  Could you please tell me if you

7    had a buyer for this 1997 Peterbuilt in 2004?

8        A       Yes.

9        Q       Who was it?

10       A       A person who was a friend of mine, who

11   wanted to buy the truck.

12       Q       Do you recall his name?

13       A       Carlos.  I know him as Carlos.

14       Q       And he was...  He wanted to buy the

15   vehicle?

16       A       That is so.

17       Q       And he would have done anything to buy

18   that vehicle?

19                      MR. PÉREZ-OBREGÓN:        Objection,

20   Your Honor.  Objection.

21                      HONORABLE JUDGE CARLO:        Grounds?

22                      MR. PÉREZ-OBREGÓN:        He does not

23   know what he would have done or not.

24                      HONORABLE JUDGE CARLO:        Counsel,

25   I believe that the...  If that... asked the

77

1    questions if judgement is granted.  It is

2    speculative whether... to ask this witness what

3    the other party would have done to buy the

4    vehicle.  Can you rephrase that?

5    BY MS. LANDRAU-RIVERA:

6         Q       In your opinion, did this person

7    really want to buy the vehicle?

8              MR. PÉREZ-OBREGÓN:        Objection

9    again, Your Honor, it is the same question.

10             MS. LANDRAU-RIVERA:        Your Honor.

11             MR. PÉREZ-OBREGÓN:        He doesn't

12   know what that other party may have wanted.

13             HONORABLE JUDGE CARLO:        We are

14   going to allow the question and the answer.  If

15   the Witness knows in his opinion whether the other

16   party had an interest in buying or not, I think

17   that is admissible.  I am going to order the

18   Witness to answer.

19   BY MS. LANDRAU-RIVERA:

20        A       Yes.

21        Q       Did he go to ta bank?

22             MR. PÉREZ-OBREGÓN:        Objection,

23   Your Honor.  He would have no way of knowing that.

24             MS. LANDRAU-RIVERA:        Your Honor,

25   this is important because he would have known...

78

```
1            MR. PÉREZ-OBREGÓN:       He doesn't...
2            MS. LANDRAU-RIVERA:
3   ...specifically if he wanted to sell the truck.
4   He is saying that he wanted to...
5            HONORABLE JUDGE CARLO:       We are
6   going to allow the question.  Let's see if the
7   answer has... if he has personal knowledge of the
8   other party's action, it may be admissible.  Let's
9   see what he answers.
10           That was not really the question...
11           MS. LANDRAU-RIVERA:       No.
12           HONORABLE JUDGE CARLO:       The
13   question was...
14           MR. PÉREZ-OBREGÓN:       No, that was
15   not...
16           HONORABLE JUDGE CARLO:
17   ...whether...
18           MS. LANDRAU-RIVERA:       He went to a
19   bank.
20           HONORABLE JUDGE CARLO:       ...he
21   know if he went to a bank, the other party.
22   BY MS. LANDRAU-RIVERA:
23       A       I don't know.
24           HONORABLE JUDGE CARLO:       He
25   doesn't know.  Okay.
```

1    BY MS. LANDRAU-RIVERA:

2         Q        Did he put that offering in writing?

3         A        No.

4         Q        Did you set a specific date in which

5    the transfer was going to be made?

6         A        No, because...

7         Q        Yes or no?

8         A        No.

9         Q        And at the time that you would have

10   sold this vehicle, how much was owed, if anything?

11        A        The vehicle did not owe anything at

12   that moment.

13        Q        The vehicle did not owe anything at

14   that moment?

15        A        No.

16        Q        Did you go to General Electric with

17   this gentleman to notify that the vehicle was

18   going to be transferred?

19        A        No, that is why I went the first time

20   to GE Capital to look for this document and they

21   denied me this document.

22        Q        That is true.  And what was the

23   reason that you stated for the denial?

24        A        Supposedly they said that I owed some

25   money to GE Capital, which was not true.

80

1          Q        Do you know how much?  Did they ever

2     tell you?

3          A        They said that I owed them some money,

4     that the check that I had taken to them that it

5     had to be credited to that account.

6          Q        Did you ask how much money was owed?

7               MR. PÉREZ-OBREGÓN:        Your Honor,

8     for the record, on page five of Counsel's Motion

9     for Summary Judgement, paragraph eighteen says

10    that "pursuant to the terms of the Contract at the

11    moment...

12              HONORABLE JUDGE CARLO:        But what

13    is your objection to the question, Counsel?   Do

14    you have an objection?

15              MR. PÉREZ-OBREGÓN:        My objection

16    is Counsel has already stated for the record the

17    amount that GE Capital says that it was owed to

18    it.

19              MS. LANDRAU-RIVERA:        Your Honor,

20    if that is...

21              HONORABLE JUDGE CARLO:        The

22    objection is denied.  You may continue.  Let's

23    continue.  This is cross examination here.  He may

24    answer.

25                   The fact that there is evidence on the

1    record about the debt is not a reason to deny this

2    question on cross examination, so the Witness may

3    answer.

4              Do you remember the question?

5              MS. LANDRAU-RIVERA:    Okay.  I'll

6    go ahead and...

7              HONORABLE JUDGE CARLO:    Can you

8    repeat it...

9              MS. LANDRAU-RIVERA:    ...recall

10   the question.

11   BY MS. LANDRAU-RIVERA:

12       Q    Did you ask GE how much was owed?

13       A    I don't remember.

14       Q    And you were never curious to know how

15   much was owed?

16       A    Well, around some three thousand eight

17   hundred dollars, something like that.

18       Q    And did they tell you why was that

19   owed?

20       A    No.

21       Q    And did you ask?

22       A    I asked them, but they would not tell

23   me.

24       Q    And despite that this... Despite the

25   fact that the debt was three thousand eight

82

1    hundred, you could still not sell the equipment?

2         A        No.

3         Q        And despite the fact that it was in

4    your name?

5         A        Yes, because its lien on it.

6         Q        And the lien could be cancelled with

7    three thousand eight hundred dollars?

8                  HONORABLE JUDGE CARLO:        It could

9    be cancelled.  The translation is "*se podía*

10   *cancelar*".

11   BY MS. LANDRAU-RIVERA:

12        A        Yes.

13        Q        And you were told that at GE?  That

14   you could cancel the lien with three thousand

15   eight hundred dollars.

16        A        They told me that I had to pay the

17   three thousand eight hundred dollars for them to

18   be able to give me that document.

19        Q        And at that time, with this gentleman

20   that you stated was going to buy that vehicle from

21   you, that 1997 Peterbuilt, did you discuss any

22   price for the sale?

23        A        Well, yes.

24        Q        How much?

25        A        Seventy thousand dollars.

83

1          HONORABLE JUDGE CARLO:     Counsel,

2     how much more do you have here?

3          MS. LANDRAU-RIVERA:     At this time

4     we have no further questions.

5          HONORABLE JUDGE CARLO:     No

6     further questions, okay.  Any re-direct...

7          MR. PÉREZ-OBREGÓN:     We would like

8     to...

9     Whereupon,

10              **RE-DIRECT EXAMINATION**

11     BY MR. PÉREZ-OBREGÓN:

12     Q     Mr. De Jesús, how much are you

13     currently paying for your Kenworth Truck?

14     A     At this moment?

15     Q     Yes.

16     A     One thousand, seven hundred and

17     eighty-four dollars.

18     Q     How much did you give for down

19     payment?

20     A     Nothing.

21     Q     Is it fair to say Mr. De Jesús, had

22     you used your 1997 Peterbuilt Truck as of total or

23     partial...

24          MS. LANDRAU-RIVERA:     Objection,

25     leading,...

84

1    BY MR. PÉREZ-OBREGÓN:

2        Q     ...down payment...

3        MS. LANDRAU-RIVERA:   ...Your

4    Honor...

5    BY MR. PÉREZ-OBREGÓN:

6        Q     ...would you be paying less?

7        MS. LANDRAU-RIVERA:   Leading.

8    Totally leading.

9        HONORABLE JUDGE CARLO:   Well,

10    Counsel, that is a leading question.  Can you

11    rephrase that?

12        MR. PÉREZ-OBREGÓN:   Yes.

13    BY MR. PÉREZ-OBREGÓN:

14        Q    How much you think you would be paying

15    if you had used the 1997 Peterbuilt Truck as a

16    down payment?

17        MS. LANDRAU-RIVERA:   Again,

18    leading, Your Honor.

19        MR. PÉREZ-OBREGÓN:   How much does

20    he think he would be paying, Your Honor?

21        MS. LANDRAU-RIVERA:   Leading and

22    it is totally *speculatory*.  That is total

23    *speculatory*.  That is subject...

24        COURT INTERPRETER:   Speculative.

25        MS. LANDRAU-RIVERA:   ...to total

85

1    speculation.

2                    HONORABLE JUDGE CARLO:       It is

3    still a leading question.  It's suggesting that

4    something would have been paid, Counsel.  Can you

5    rephrase that question?

6                    MR. PÉREZ-OBREGÓN:       Yes.

7    BY MR. PÉREZ-OBREGÓN:

8        Q        Mr. De Jesús, what was the value, what

9    was the price of that Kenworth Truck at the moment

10   you acquired it?

11       A        One and twenty thousand dollars.

12                   MS. LANDRAU-RIVERA:       Your Honor,

13   we object again to that question.

14                   HONORABLE JUDGE CARLO:       Grounds?

15                   MS. LANDRAU-RIVERA:       We do not

16   have the contract as to that 2005 truck, we... It

17   is totally *speculatory*, what it is that happened

18   there...

19                   MR. PÉREZ-OBREGÓN:       Your Honor,

20   she opened the door, and upon asking him about his

21   dealings with Cooperativa de Caguas.

22                   HONORABLE JUDGE CARLO:       I don't

23   see in my... in my notes, Counsel.  Where is

24   this... talking about this Kenworth, where was

25   that mentioned?

86

1          We are talking about the latest

2     vehicle that he purchased?

3              MR. PÉREZ-OBREGÓN:      Yes, Your

4     Honor.

5              HONORABLE JUDGE CARLO:      And where

6     was that during the Cross Examination.  I don't

7     think that that was actually an item, the price of

8     that item was not actually brought up, of the

9     Kenworth vehicle, Counsel.  So we are going to

10    deny the question.

11             MR. PÉREZ-OBREGÓN:      Very well,

12    Your Honor.

13             HONORABLE JUDGE CARLO:      The

14    objection is granted, okay?  Anything else?

15   BY MR. PÉREZ-OBREGÓN:

16      Q        Why couldn't you sell your truck, your

17    1997 Peterbuilt Truck?  Why couldn't you sell it?

18      A        Because of this reason.

19           (Witness points to Certificate of Title.)

20      Q        But why did you...

21             HONORABLE JUDGE CARLO:      I am

22    sorry, I could not hear the Translator.  What was

23    that?

24             COURT INTERPRETER:      Oh, "because

25    of this reason" and then he points to this

87

1     document, which is the Certificate of Title.

2                HONORABLE JUDGE CARLO:    Can you

3     name the exhibit there?

4                COURT INTERPRETER:    Yes, Your

5     Honor, Exhibit one, Plaintiff's Exhibit one.

6     BY MR. PÉREZ-OBREGÓN:

7        Q      But didn't you just pay the three

8     thousand, eight hundred dollars?

9        A      Because I thought that was unfair.

10       Q      Thank you.

11            MR. PÉREZ-OBREGÓN:    No further

12     questions, Your Honor.

13            HONORABLE JUDGE CARLO:    Okay.

14     You have...  Who is your next witness?

15            MR. PÉREZ-OBREGÓN:    We have Mrs.

16     Sonia Hernández-Meléndez, Your Honor.

17            HONORABLE JUDGE CARLO:    Sonia

18     Hernández.  This witness may step...  Mr. Wilfredo

19     De Jesús, you may step down.  Watch you step here

20     on the... as you get down.

21            And we will call the next witness,

22     Sonia Hernández-Meléndez.

23            MS. LANDRAU-RIVERA:    If I may,

24     Your Honor.

25            HONORABLE JUDGE CARLO:    Go

1    ahead.

2                    MS. LANDRAU-RIVERA:        In order to

3    save time and... Your Honor, she may identify

4    herself as, of course, and who she alleges to be,

5    but we would request that questions be directed

6    specifically as to the damages, and we would have

7    the same standing objections as we did previously

8    as to the value and as to the fact that they were

9    economically precluded and as to emotional

10   damages.  We would request a standing objection.

11                   HONORABLE JUDGE CARLO:        Okay.

12   Very well.  Counsel.  Take your seat, the witness,

13   and state your full name for the record.

14                   WITNESS:        My name is Sonia

15   Hernández Meléndez.

16   Whereupon,

17                   **SONIA HERNÁNDEZ-MELÉNDEZ**

18   was called as a witness and having been first been

19   duly sworn, was examined and testified as follows:

20                   **DIRECT EXAMINATION**

21   BY MR. PÉREZ-OBREGÓN:

22        Q        Are you married to Mr. Wilfredo De

23   Jesús Rivera?

24        A        Yes, sir.

25        Q        How long have you been married?

1          A        Thirty years.

2                    MS. LANDRAU-RIVERA:       Your Honor,

3     if I may?   Again, in order to save time, we can

4     stipulate the fact that she is his wife and that

5     they have three children together, and...

6                    MR. PÉREZ-OBREGÓN:        I haven't

7     asked those questions yet...

8                    MS. LANDRAU-RIVERA:       ...that they

9     live where they live...

10                    MR. PÉREZ-OBREGÓN:        ...Your

11    Honor.

12                    MS. LANDRAU-RIVERA:       I think you

13    are getting ahead of the game here, Counsel.

14    Let's see...

15                    The stipulation is not accepted, I

16    take it, so if we can... Let's continue.  Go

17    ahead.

18                    MR. PÉREZ-OBREGÓN:        Yes.

19    BY MR. PÉREZ-OBREGÓN:

20          Q        Mrs.  Hernández, what sort of husband

21    and father would you classify Mr. Wilfred De

22    Jesús?

23          MS. LANDRAU-RIVERA:       Your Honor,

24    objection, *speculatory*, irrelevant...

25          MR. PÉREZ-OBREGÓN:       They've been

1    married for thirty years, Your Honor.

2         HONORABLE JUDGE CARLO:     We are going

3    to allow the...

4         MS. LANDRAU-RIVERA:     Your Honor, this

5    is irrelevant.

6         HONORABLE JUDGE CARLO:     The

7    irrelevancy of the question that the Court may

8    determine, we'll give it whatever weight it is,

9    but we are going to allow the line of questioning.

10   You may continue.

11   BY MR. PÉREZ-OBREGÓN:

12        Q     What sort of husband and father would

13   you classify Mr. Wilfredo De Jesús?

14        A     Up to this moment, because he used to

15   be a good man before...

16        Q     In general.  In general.

17        A     Yes, in general, he is a good man, a

18   very good person.

19        Q     What personality changes, if any, have

20   you noticed in your husband within the last two

21   and a half years?

22        MS. LANDRAU-RIVERA:     Your Honor,

23   we object again.  And we request... First of all,

24   she is not a psychiatrist.  Second, this is her

25   opinion.

1          We request that if questions are being

2    made as to her opinion of her husband, Your Honor,

3    that it be specific as to what conduct she...

4    because it is totally *speculatory* what it's being

5    said here.

6          And he... and Mr. Wilfredo De Jesús

7    already testified as to the way that he felt.  And

8    the way that he felt.  She may testify, we

9    understand, as to her damages, Your Honor, but not

10   as to the conduct of a witness that has already

11   stood at trial... stood as a witness.

12          HONORABLE JUDGE CARLO:      No, we...

13

14          MR. PÉREZ-OBREGÓN:      But...

15          HONORABLE JUDGE CARLO:      Let's

16   hear about the damages.  I agree with Counsel

17   that...

18          MR. PÉREZ-OBREGÓN:      Your Honor, I

19   wanted to show...

20          HONORABLE JUDGE CARLO:      I want to

21   know what personal knowledge she has of damages to

22   herself, and...

23          MR. PÉREZ-OBREGÓN:      I wanted...

24          HONORABLE JUDGE CARLO:      ...if she

25   knows of damages to other parties personally that

92

1    she can testify, then she can testify, not

2    speculate.

3              MR. PÉREZ-OBREGÓN:     She is not

4    speculating, she...

5              HONORABLE JUDGE CARLO:     Okay.

6              MR. PÉREZ-OBREGÓN:     ...she knows

7    this witness better than anyone else, so she can

8    testify as to personality changes he's had within

9    the last two and a half years.

10              HONORABLE JUDGE CARLO:     If she

11    has personal knowledge...

12              MR. PÉREZ-OBREGÓN:     That is

13    correct.

14              HONORABLE JUDGE CARLO:     ...if

15    she... Let's be specific, as specific as we can.

16              MS. LANDRAU-RIVERA:     Your

17    Honor...

18              HONORABLE JUDGE CARLO:     And no

19    leading questions.  Let's just try to make this as

20    fast as possible.  You may continue.

21    BY MR. PÉREZ-OBREGÓN:

22       Q     Yes.  What personality changes, if

23    any, have you observed in your husband within the

24    last two and a half years?

25              MS. LANDRAU-RIVERA:     Your Honor,

93

1  again, hearsay, the Witness has already being in

2  the stand and he is requesting...

3     MR. PÉREZ-OBREGÓN:  Your Honor,

4  whatever...

5     HONORABLE JUDGE CARLO:  No, no,

6  one at a time.

7     MR. PÉREZ-OBREGÓN:  ...it is not

8  hearsay.

9     HONORABLE JUDGE CARLO:  Let's

10  come... come forward, both of you.  Come to the

11  bank.   Off the record.

12  (Off the record)

13  (Off the record)

14     HONORABLE JUDGE CARLO:  Counsel.

15     MR. PÉREZ-OBREGÓN:  Yes.

16  BY MR. PÉREZ-OBREGÓN:

17   Q  Again, Witness, I asked you, what

18  personality changes, if any, have you observed

19  from your husband within the last two and a half

20  years?

21   A  Many.  He has changed a lot, because

22  sometimes when I go... when we go to bed and I

23  turn over to hug him, and he is not in bed, he is

24  not in bed.  And I look for him everywhere and I

25  find him in the living room in the dark, crying.

1          And I ask him why, what is he doing

2     there...

3               MS. LANDRAU-RIVERA:       Objection,

4     hearsay.

5               HONORABLE JUDGE CARLO:       Counsel,

6     the question is... he is asking... She is...

7     First of all, this is not... it's an answer that

8     you are objecting to.  The party has not finished

9     the answer.  And we don't believe it is hearsay.

10    Your objection is denied.  You may answer.

11    BY MR. PÉREZ-OBREGÓN:

12        A       And I ask him what is he doing there

13    in the dark alone, and he tells me that the

14    worries don't allow him to sleep.   So he just

15    gets up and goes there to sit and think about it,

16    that he can not fall asleep.

17        Q       How have these changes affected your

18    relationship with him?

19        A       In everything.

20        Q       Could you please be more specific for

21    the Court?

22        A       We can't go out, he has no desire to

23    go out, we can not be together.  We have to remain

24    at home all the time because he has no desire

25    whatsoever to go out.  He is very depressed and

1    just wants to stay home.

2    Q        And how have these attitudes affected

3    his relationship with your sons and daughters?

4                MS. LANDRAU-RIVERA:    There is an

5    objection.

6                HONORABLE JUDGE CARLO:    Grounds?

7                MS. LANDRAU-RIVERA:    Hearsay and

8    *speculatory*, sons and daughters are not the

9    witness.

10                HONORABLE JUDGE CARLO:

11    Speculation and hearsay,...

12                MS. LANDRAU-RIVERA:    She can

13    state as...

14                HONORABLE JUDGE CARLO:    ...we

15    believe that this is not hearsay, she can testify

16    if she has personal knowledge of any reflection on

17    the relationships.  This is evidence on damages.

18    She may testify on how it has affected her family

19    life, her husband and her children, if she has

20    personal knowledge of it.

21    BY MR. PÉREZ-OBREGÓN:

22    Q        Do you have personal knowledge of how

23    these changes and attitudes have affected your

24    sons... the relations with your sons and

25    daughters, and if you do, could you please explain

1    it to the Court?

2         A         Well, yes, my children are afraid to

3    be with us.  They don't want to go out with us,

4    they don't want to talk to him because they are

5    afraid of him.

6         Q         What plans, if any, did you and your

7    husband have in relation to the sale of that

8    vehicle back in the year 2004?

9         A         My daughter always wanted to be a

10   chef, and then that was not able to be carried

11   out...

12        Q         Why wasn't she able to be a chef...

13   study to be chef?

14        A         Because since we could not...

15             MS.  LANDRAU-RIVERA:        Your Honor,

16   objection again, hearsay.  The daughter is not

17   here to testify this, and the Witness was not

18   questioned as to this.

19             And if he was going to pay for

20   something, he could have been... he could have

21   stated it for the record.

22             HONORABLE JUDGE CARLO:        Counsel?

23             MR. PÉREZ-OBREGÓN:        Your Honor,

24   she has been the spouse for thirty years.  And she

25   is the mother of these children.  No one is in a

1    better position to understand what is going on in

2    that family right now than the mother and the

3    spouse.

4               HONORABLE JUDGE CARLO:      Well,

5    we...

6               MR. PÉREZ-OBREGÓN:      It is not

7    hearsay.

8               HONORABLE JUDGE CARLO:      Counsel,

9    the... The children are not included in this

10    Complaint.  They are not parties to this

11    Complaint, right?

12               MR. PÉREZ-OBREGÓN:      No.

13               HONORABLE JUDGE CARLO:      Alright.

14    You had a chance to include them if you wanted to

15    include them.

16               MR. PÉREZ-OBREGÓN:      But it's a

17    family affair.  She is stating that the...

18               HONORABLE JUDGE CARLO:      No, I

19    think she is going a little bit too far stating

20    what their child wanted to study.  The child

21    should have been brought in if you wished to have

22    the child testify.  And I think that we are going

23    a little bit too far here.

24           Let's stick to what her... how this

25    affected her and her husband, which she has more

1    knowledge of.

2    BY MR. PÉREZ-OBREGÓN:

3        Q        What else did plan to do with that

4    money?

5        A        Well, do some repairs to the home a

6    small car.

7        Q        Were those plans accomplished?

8        A        No, we haven't accomplished them yet.

9        Q        How did you feel about bankruptcy when

10   those plans were not able to have been

11   accomplished?  How did you feel about your

12   bankruptcy?

13       A        Well, that it wasn't worth the

14   trouble.

15       Q        What was not worth the trouble?

16       A        Well, that it was not worth the

17   trouble to file bankruptcy because instead of

18   moving forward, then everything went backwards.

19       Q        Are you and your husband currently

20   receiving professional help?

21       A        Yes.

22       Q        What do you feel when you see that

23   truck parked in front of your yard every day?

24       A        I feel like...  I feel just like I

25   felt on September 11th.  I feel like a great

1    sadness and a great restlessness, and very sad.

2         Q         If you had to put a dollar amount on

3    your pain and your suffering due to GE Capital's

4    refusal to honor the Chapter 13 discharge, what

5    amount would you put?

6              MS.  LANDRAU-RIVERA:       Your Honor,

7    again, we object on the same basis that we did

8    previously.  This is totally speculative and she

9    is not an expert witness as to that.

10             HONORABLE JUDGE CARLO:        We

11   understand she is not an expert witness, but we

12   are going to allow this, this line of questioning

13   like we have before.  We'll give it whatever

14   weight we think it deserves.  The Witness can

15   answer.

16   BY MR. PÉREZ-OBREGÓN:

17        A         None, no price whatsoever because if

18   you don't have health and you don't have...

19             HONORABLE JUDGE CARLO:       How much

20   do you have left, Counsel here?

21   BY MR. PÉREZ-OBREGÓN:

22        A         ...or happiness,...

23             MR. PÉREZ-OBREGÓN:       I am

24   finished, Your Honor.

25             HONORABLE JUDGE CARLO:       You are

100

1    finished?

2                    MR. PÉREZ-OBREGÓN:        Yes.

3                    HONORABLE JUDGE CARLO:        Okay.

4    BY MR. PÉREZ-OBREGÓN:

5        A        ...you can not have anything, you can

6    not live.

7                    MR. PÉREZ-OBREGÓN:        Thank you.

8    No further questions, Your Honor.

9                    HONORABLE JUDGE CARLO:        Cross

10   examination?

11                   MS.  LANDRAU-RIVERA:        A very

12   short one, Your Honor.

13                   HONORABLE JUDGE CARLO:        Go ahead.

14   Whereupon,

15                    **CROSS EXAMINATION**

16   BY MS. LANDRAU-RIVERA:

17       Q        Mrs. Hernández, good morning.

18       A        Good morning.

19       Q        All that you have stated regarding

20   your husband, has this occurred after the

21   Discharge?

22       A        After they denied him the permit and

23   everything, after he went to GE Capital.

24       Q        He was a good husband before?

25       A        Well, of course, a perfect one.

1    Q        You never had this type of problems

2    with him before?

3    A        Never.

4    Q        And you restate yourself that you

5    never had any problems like this before with him?

6    A        No.  And I reaffirm herself as to my

7    position, no.

8    Q        And that economically your perils or

9    your problems began when GE refused to surrender

10   title?

11   MR. PÉREZ-OBREGÓN:      Objection,

12   Your Honor.

13   MS.  LANDRAU-RIVERA:      The question

14   was clear, Your Honor.

15   MR. PÉREZ-OBREGÓN:      Your Honor,

16   she hasn't alleged any economical problems.

17   HONORABLE JUDGE CARLO:      Objection

18   is denied.  The Witness may answer.

19   BY MS.  LANDRAU-RIVERA:

20   A        That is so.

21   Q        Mrs. Hernández, do you recall filing

22   for a Chapter 13 Bankruptcy?

23   A        Well, yes.

24   Q        Yes or no?

25   A        Well, my husband and I...

102

1       Q      Did you file bankruptcy?

2       A      Yes.

3       Q      And was that done in 2001?

4       A      I don't remember.  I don't recall the

5 date exactly.

6       MS. LANDRAU-RIVERA:    Just... Let

7 the record show that they filed on December 2000,

8 which is the Docket, the...  And...

9       MR. PÉREZ-OBREGÓN:    Yes, Your

10 Honor, the case was filed January 28th of the year

11 2000.

12       MS. LANDRAU-RIVERA:    January

13 28th, year...

14       HONORABLE JUDGE CARLO:    What is

15 it?  Well, the record...

16       MS. LANDRAU-RIVERA:    ...2000.

17       HONORABLE JUDGE CARLO:    ...will

18 show when it was...

19       MS. LANDRAU-RIVERA:    Yes.

20       HONORABLE JUDGE CARLO:    But does

21 anybody know when it was?

22       UNIDENTIFIED FEMALE VOICE:    It is

23 January 28th, 2000.

24       MR. PÉREZ-OBREGÓN:    January 28th,

25 2000.

**JAMES ROHAN REPORTERS**
Tel. 725-7203 Cell 329-0114 Email rohanmav@aol.com
P.O. Box 16062, Santurce, P.R. 00908

103

1          HONORABLE JUDGE CARLO:       Okay.   So

2   we have it clear.  2000, January 28th.  Alright.

3   Go ahead.

4   BY MS.  LANDRAU-RIVERA:

5          Q          And at the time of the filing for

6   bankruptcy in 2000, did you have this sort of

7   situations with your husband?

8          A          No.

9          Q          And he never expressed that he did not

10  know what he was going to do with the debts, and

11  he never got up in the middle of the night worried

12  about the situations with the debts?

13         A          Yes, but it was after GE Capital

14  denied him the permits.  We were like between the

15  wall and the sword.  GE put us in a position that

16  we were between the wall and sword.

17         Q          And you, his wife of thirty years, say

18  that during 1999, 2000, 2001, 2002, he had no

19  worries regarding economic situations or he never

20  got up at night worried and you found him crying,

21  none of that occurred?

22         A          Of that nature as such, no.

23              L:          No further questions, Your

24  Honor.

25              HONORABLE JUDGE CARLO:       Okay.   I

104

1   have no questions for the Witness.   Doña

2   Hernández... *Doña Sonia...*

3                   WITNESS:        Aha.

4                   HONORABLE JUDGE CARLO:        ...*puede*

5   *retirarse.  Gracias.  Cuiadado aquí bajandose por*

6   *la escalera.*

7                   You have one witness, right?

8                   MR. PÉREZ-OBREGÓN:      Yes, Your

9   Honor, we have Psychiatrist Dr. Carmen Sanz.

10                  HONORABLE JUDGE CARLO:      Go ahead.

11                  MR. PÉREZ-OBREGÓN:      Your Honor,

12  can we stipulate her curriculum vitae to save time

13  or do we need to question her on it?

14                  MS.  LANDRAU-RIVERA:      Your Honor,

15  the situation here is that we have not had an

16  opportunity to depose this... and really know who

17  she is.  We have read the curriculum vitae, but it

18  is the first time that we are going to be able

19  to...

20                  HONORABLE JUDGE CARLO:        Okay.

21                  MR. PÉREZ-OBREGÓN:      Your Honor,

22  that...

23                  HONORABLE JUDGE CARLO:      Show...

24                  MS.  LANDRAU-RIVERA:

25  Moreover...

105

1            HONORABLE JUDGE CARLO:      You

2     don't want to stipulate anything, we'll have to go

3     into some it.

4            MR. PÉREZ-OBREGÓN:       That

5     curriculum vitae was provided in the July 2005

6     pre-trial Report...

7            HONORABLE JUDGE CARLO:

8     Counsel...

9            MR. PÉREZ-OBREGÓN:       ...as the...

10           HONORABLE JUDGE CARLO:      The

11    opposing counsel said that she doesn't want to

12    stipulate, so let's...

13           MS.  LANDRAU-RIVERA:      May I...

14           HONORABLE JUDGE CARLO:      Now,

15    before we start with this witness...   Yes?

16           MS.  LANDRAU-RIVERA:      May I

17    address the Court?

18           HONORABLE JUDGE CARLO:      Yes.

19           MS.  LANDRAU-RIVERA:      Maybe this

20    can probably expedite it.  Your Honor, we reaffirm

21    our allegation as... our request to strike any

22    evidence as to the mental and emotional damages

23    that was not alleged in the Complaint.

24            This Court stated that it would allow

25    the witnesses to testify as to that and that it

1   would make a determination as to that the

2   witnesses have testified already.

3            This is an expert witness, which does

4   not have personal knowledge of what has occurred.

5   And the situation, Your Honor, is that we do not

6   have...

7            The situation is, Your Honor, that we

8   specifically object to the evidence on emotional

9   damages.

10            HONORABLE JUDGE CARLO:        We

11   understand that.

12            MR. SEGARRA-MIRANDA:        Your

13   Honor, may I address the Court?

14            HONORABLE JUDGE CARLO:        Yes.

15            MR. SEGARRA-MIRANDA:        Wilfredo

16   Segarra, for GE Capital.  It is just that after

17   hearing the evidence presented by Plaintiffs, Your

18   Honor, and the specific acts which they are now at

19   trial presenting before this Court, acts which

20   allegedly are of such monumental characteristics.

21   We request the Court to reconsider at this time

22   our Motion to Strike and Eliminate, to strike all

23   evidence presented at this trial as to emotional

24   damages, Your Honor.

25            And the basis for our reconsideration

107

1    is the following.   At the time when the Complaint

2    was prepared, Your Honor,...

3                    MR. PÉREZ-OBREGÓN:        Your Honor,

4    isn't that a closing argument?

5                    MR. SEGARRA-MIRANDA:        If...  No,

6    this...

7                    HONORABLE JUDGE CARLO:        No, it is

8    a Motion to Strike again...

9                    MR. SEGARRA-MIRANDA:        To strike,

10   Your Honor.

11                   HONORABLE JUDGE CARLO:        ...which

12   we have already decided, but you...

13                   MR. SEGARRA-MIRANDA:        In

14   reconsideration and in the light... I believe that

15   Your Honor said that it would allow the evidence

16   and then make a determination whether to allow or

17   not to allow.

18                   Now, the basis of our motion, Your

19   Honor, is that the facts presented for this case

20   in request as the basis for the request to amend

21   are facts or such monumental import, Your Honor...

22                   HONORABLE JUDGE CARLO:        Counsel,

23   I think this motion should be made after we finish

24   with Plaintiff's case, full case.

25                   I'll hear this motion after we finish

1    with the case, okay?

2                    I want to hear the evidence of this

3    last witness, then we'll have closing arguments

4    and I'll make a decision, okay?

5                    MR. SEGARRA-MIRANDA:     Very well,

6    Your Honor.

7                    HONORABLE JUDGE CARLO:     I think

8    it is premature.  We have one more witness.  We

9    want to get through this one more witness.

10                    I am going to need a couple of minutes

11    here to call my chambers and I'll be right back.

12                    MR. PÉREZ-OBREGÓN:     Yes, Your

13    Honor.

14                    HONORABLE JUDGE CARLO:     We'll

15    take a short three-minute break, okay.

16    (Off the record)

17    (On the record)

18                    HONORABLE JUDGE CARLO:     Mr.

19    Obregón, you have your witness ready?

20                    MR. PÉREZ-OBREGÓN:     Yes.  Dr.

21    Carmen Sanz...

22                    HONORABLE JUDGE CARLO:     Carmen

23    Sanz, please step forward and take the stand.

24                    MR. PÉREZ-OBREGÓN:     *¿Cómo está su*

25    *inglés, doctora*?

109

1              DR. SANZ:        *Yo puedo entenderlo.*

2              MR. PÉREZ-OBREGÓN:        Our

3    Interpreter stepped out.  I think she is in the

4    bathroom, Your Honor.

5              HONORABLE JUDGE CARLO:        Okay.

6    We'll wait for her.  In the meantime...  Are you

7    going to use an interpreter for this witness?

8              MR. PÉREZ-OBREGÓN:        I think she

9    would prefer it.

10             HONORABLE JUDGE CARLO:        Okay.

11   Take the stand.  How long do you think you'll be

12   with this?

13             MR. PÉREZ-OBREGÓN:        Your Honor, I

14   shouldn't take longer than ten minutes.

15             HONORABLE JUDGE CARLO:        Ten

16   minutes, okay.  These documents are, Counsel, that

17   you presented, Landrau...  There were two

18   documents that you presented here.

19             Are you intending in introducing these

20   or having them marked as exhibits?  They should

21   have be marked.  Schedule "B", personal property

22   and...

23             MS.  LANDRAU-RIVERA:        Yes,...

24             HONORABLE JUDGE CARLO:        ...a

25   list of vehicles?

110

1              MS.  LANDRAU-RIVERA:     Yes.

2              HONORABLE JUDGE CARLO:     What was

3      your purpose for these?

4              MS.  LANDRAU-RIVERA:     That was

5      to read... that was...

6              HONORABLE JUDGE CARLO:     A list

7      of vehicles and Schedule "B".

8              MS.  LANDRAU-RIVERA:     Yes.  That

9      was to rebut the fact that he said...

10             HONORABLE JUDGE CARLO:     I know,

11     but do you want them  marked as exhibits?

12             MS.  LANDRAU-RIVERA:     Yes, sir.

13             HONORABLE JUDGE CARLO:     Alright.

14     We'll let's mark them as exhibits for Defendants.

15     Ah?

16             Exhibit "A" and "B" or "A"?  "A" and

17     "B", alright.

18             (Whereupon the above-referenced

19     documents were marked as Exhibits A and B for

20     Defendants.)

21             MR. PÉREZ-OBREGÓN:     Ready, Your

22     Honor.

23             HONORABLE JUDGE CARLO:     You are

24     ready.  Witness, please state your name for the

25     record.  Full name.

111

1          WITNESS:        Dr. Carmen Sanz-

2    Lebrón.

3          HONORABLE JUDGE CARLO:        Mr.

4    Pérez-Oregón, you may commence.

5          MR. PÉREZ-OBREGÓN:       Yes, Your

6    Honor.

7    Whereupon,

8              **DR. CARMEN SANZ-LEBRÓN**

9    was called as a witness and having been first been

10   duly sworn, was examined and testified as follows:

11              **DIRECT EXAMINATION**

12   BY MR. PÉREZ-OBREGÓN:

13       Q        Doctor, please state your address,

14   your business address.  Please state your business

15   address.

16       A        Apartment 2-B, Las Torre Sur

17   Condominium, Bayamón, Puerto Rico.

18       Q        And you have a degree in what medical

19   specialty?

20       A        Psychiatry.

21       Q        Doctor, where did you study

22   Psychiatry?

23       A        In Puerto Rico, at the Psychiatry

24   Institute in Puerto Rico.

25       Q        When did you graduate from there?

1          A          In 1987.

2          Q          Before that, did you study Medicine?

3          A          Yes.

4          Q          Where did you study Medicine?

5          A          At the Cayey Medical School.

6          Q          Thank you.  When did you graduate from

7     there?

8          A          1982.

9          Q          Okay.  And how long have you had your

10    private practice?

11         A          As a Psychiatrist I have had it for

12    nineteen years.

13         Q          Okay.  Do you know Mr. Wilfredo De

14    Jesús and Mrs. Sonia Hernández-Meléndez?

15         A          Yes.

16         Q          How do you know them?

17         A          Because they came to my office looking

18    for emotional help.

19         Q          When did they come to your office for

20    the first time?

21         A          In...

22                    MS.  LANDRAU-RIVERA:        Objection,

23    Your Honor.

24                    HONORABLE JUDGE CARLO:      Grounds?

25                    MS.  LANDRAU-RIVERA:      The same

1     one.  We are objecting all evidence as to

2     emotional damages because they are not alleged in

3     the Complaint and that places General Electric in

4     a state in which it can not properly defend upon

5     the merits any allegations because it was not put

6     in the Complaint, Your Honor.  And she just stated

7     that Plaintiffs went to her office to get

8     emotional help.                     HONORABLE JUDGE

9     CARLO:     The objection has been stated before

10     this Court has said that we are going to allow the

11     evidence to be introduced.

12          And we will determine whether

13     emotional damages are going to be allowed, whether

14     they can be allowed legally in this circuit.  And

15     if... the first issue would be whether emotional

16     damages are allowed in violation of stay.

17          And the second issue, well, this Court

18     will have to determine as whether we can allow

19     them when they haven't been specifically pleaded

20     in the Complaint.

21          But in the meantime we are going to

22     allow the testimony.  The Witness may answer this

23     line of questioning.

24          MR. PÉREZ-OBREGÓN:       Thank you,

25     Your Honor.

1    BY MR. PÉREZ-OBREGÓN:

2        Q        I repeat the question.  When was the

3    first time that Mr. Wilfredo De Jesús-Rivera and

4    Mrs. Sonia Hernández-Meléndez came to visit your

5    office?

6        A        October of 2002.

7        Q        For what purpose?

8        A        To receive psychiatric treatment.

9        Q        For problem in specific, please?

10       A        Mr. Wilfredo complained about the fact

11   that he was depressed and anxious.

12       Q        And how about Mrs. Sonia Hernández?

13       A        Her symptoms were compatible with

14   depression.

15       Q        During the course of your treatment,

16   did they get better?

17       A        Yes.

18                HONORABLE JUDGE CARLO:     What date

19   did she say the first meeting was in?  Did she say

20   the date?

21                MR. PÉREZ-OBREGÓN:        Yes, Your

22   Honor, the...

23   BY MR. PÉREZ-OBREGÓN:

24       Q        Could you repeat the date, please?

25       A        October 2002.

115

1           HONORABLE JUDGE CARLO:      Thank

2    you.

3    BY MR. PÉREZ-OBREGÓN:

4        Q       Could you explain to the Court what

5    type of personality Mr. Wilfredo De Jesús has?

6        A       During the course of his visits to my

7    office, as I evaluated his symptoms, I also have

8    to evaluate his personality.

9                He is very straight, he is very kind

10   minded, he is obsessive, but not to the point of

11   it being a pathology.

12       Q       Thank you.  And can you please explain

13   Mrs. Sonia Hernández' personality for the Court?

14       A       Yes.  She is a submissive humble woman

15   and she has being manifesting symptoms of

16   depression from a long way back.

17       Q       What personality changes did you

18   observe in both of them from 2000... from January

19   2004 onwards?

20               MR. SEGARRA-MIRANDA:      Objection,

21   Your Honor.

22               HONORABLE JUDGE CARLO:      Grounds?

23               MR. SEGARRA-MIRANDA:      Lack of

24   foundation.   The testimony now...

25               HONORABLE JUDGE CARLO:      Granted.

116

1    Granted, Counsel, there is no foundation for any

2    personality changes.  The question is... it is

3    improper.

4             MR. SEGARRA-MIRANDA:     Your Honor,

5    we also have an objection, if the Counsel is going

6    to go into treatment, the medical record has not

7    been presented as... to be the best evidence of

8    the treatment, the dates of the treatments and

9    findings.  We will have a standing objection right

10   now as to any testimony as the treatment of the

11   Plaintiffs because the medical record has not been

12   offered to...

13             HONORABLE JUDGE CARLO:     It think

14   it is premature.  Let's just wait to see if the...

15   what the Witness is going to be used for.   Go

16   ahead.

17   BY MR. PÉREZ-OBREGÓN:

18        Q        Witness, you said that their medical

19   condition had improved during the course of your

20   treatment?

21        A        Yes.

22        Q        How is their medical condition at this

23   moment?

24             How is their personality, their

25   medical condition at this moment?

1          MR. SEGARRA-MIRANDA:        Objection

2    on lack of foundation.

3          HONORABLE JUDGE CARLO:        Granted,

4    Counsel.  Can you lay foundations for these

5    changes, lack of personality?  We don't know

6    what...  What the Witness has really just said,

7    describe the type of personality, and now you are

8    jumping to... to personality changes, and you are

9    way ahead of it.

10         MR. PÉREZ-OBREGÓN:        Okay, Your

11   Honor.

12   BY MR. PÉREZ-OBREGÓN:

13   Q        When Mr. Wilfredo De Jesús first came

14   to see you, what were his conditions?

15   A        When he came, his symptoms were

16   compatible with depression, with sadness, he had

17   no desire to do anything, poor concentration,

18   insomnia.

19         At that moment Mrs. Sonia had suffered

20   cerebral-vascular accidents.  She had had some

21   strokes.  And Mr. Wilfredo was very concerned

22   about this, on top of the concerns that he had

23   because of work.

24   Q        How many times a week, or how many

25   times a month did they come to see you?

1        A        Originally they were coming on a bi-
2   weekly basis.  When they improved, then they
3   started coming once a month.
4        Q        So are you still seeing them once a
5   month?
6        A        Yes.
7        Q        What medication, if any, did you
8   prescribe?
9        A        To Mr. Wilfredo?
10       Q        Yes.
11       A        Originally what I prescribed for Mr.
12  Wilfredo was Zoloft, 25 milligrams to go up to 50
13  milligrams.  Also Transen for anxiety, we started
14  with 2.75 milligrams on a daily basis.  And then
15  Sonata at 10 milligrams at night, to sort of help
16  him fall asleep.
17       Q        Were you going to add anything to
18  that?
19       A        No.
20       Q        Are you still prescribing the same
21  amount of medicine to Mr. Wilfredo De Jesús?
22       A        No.
23       Q        Why not?
24       A        No, because from March 2004 onwards he
25  started to present other symptoms.

119

1   Q  What symptoms?

2     MR. SEGARRA-MIRANDA:  Objection,

3 Your Honor.

4     HONORABLE JUDGE CARLO:  Grounds?

5     MR. SEGARRA-MIRANDA:  Your Honor,

6 the fact that the medical record has not been

7 presented in evidence, which would be the best

8 evidence as to what symptoms and treatment the

9 Plaintiffs received.

10     HONORABLE JUDGE CARLO:  Counsel?

11     MR. PÉREZ-OBREGÓN:  Your

12 Honor...

13     HONORABLE JUDGE CARLO:  Best

14 evidence?

15     MR. PÉREZ-OBREGÓN:  The best

16 evidence is the Witness, Your Honor.

17     HONORABLE JUDGE CARLO:  Okay, so

18 you are saying that the medical record is not

19 necessary?

20     MR. PÉREZ-OBREGÓN:  Yes, Your

21 Honor.

22     HONORABLE JUDGE CARLO:  Alright.

23 We believe that this evidence should be allowed.

24 We are not dealing here with a content of

25 document, the records were not requested as such,

1      were they in evidence, Counsel?  Or did you

2      request...

3                    Did you fail to receive records in

4      evidence?  Is that what you are saying?

5                    MS.  LANDRAU-RIVERA:        What we

6      requested any evidence that would be presented at

7      trial and a brief summary of the testimony which

8      was going to be presented.

9                    HONORABLE JUDGE CARLO:        Okay.

10                   MS.  LANDRAU-RIVERA:        And, of

11     course, this testimony or even a remote short

12     narrative was not provided.

13                   HONORABLE JUDGE CARLO:        Okay.

14     Counsel?

15                   MR. PÉREZ-OBREGÓN:        Your

16     Honor,...

17                   HONORABLE JUDGE CARLO:        Did the

18     pre-trial...

19                   MR. PÉREZ-OBREGÓN:        Yes...

20                   HONORABLE JUDGE CARLO:

21     ...include the testimony of this witness?

22                   MR. PÉREZ-OBREGÓN:        Page four,

23     the pre-trial has Mrs. Carmen Sanz, and page six

24     has a curriculum vitae which was sent to Counsel.

25                   In addition, Your Honor, I call the

1    attention of...  The motion submitted on June 7th

2    by opposing counsel, where opposing counsel

3    attached to that motion an interrogatory, request

4    for production of documents and Plaintiff's

5    answers to the Interrogatories.

6           Our answers to interrogatories, to the

7    interrogatories on page two, sub section "B",

8    shows that...

9           HONORABLE JUDGE CARLO:     Speak

10   into the microphone.

11          MR. PÉREZ-OBREGÓN:     Yes.   Shows

12   that Mrs. Carmen Sanz was to testify at the trial

13   and the content of that testimony.

14          Your Honor, no further inquiry was

15   made in relation to Mrs. Carmen Sanz, Dr. Sanz, I

16   am sorry.

17          Opposing party at all times had

18   knowledge and notice that she was going to be

19   present today.

20          No deposition was requested, no

21   interrogatories were requested in relation to her,

22   Your Honor.

23          HONORABLE JUDGE CARLO:     Okay. It

24   appears that between the pre-trial, the answers of

25   the interrogatories...

122

1          By the way, the answers of the

2    interrogatories specifically state that this

3    psychiatrist will narrate Plaintiff's emotional

4    condition. That is pretty specific. Resulting from

5    GE Capital's refusal to surrender title.

6          I don't have any motion on the part of

7    Defendants to produce anything regarding that.  I

8    don't have any motions, except a motion to strike

9    that was filed last night.

10          I don't have anything to order the

11    other side to produce any more information.  There

12    is no motion for sanctions against... regarding

13    discovery before this Court, so basically I...

14          MR. SEGARRA-MIRANDA:        Your

15    Honor...

16          HONORABLE JUDGE CARLO:        Yes.

17          MR. SEGARRA-MIRANDA:        Let me

18    just state that...

19          HONORABLE JUDGE CARLO:        I don't

20    think there is really any ground to deny that the

21    evidence being presented by testimony.

22          MR. SEGARRA-MIRANDA:        Let me just

23    bring to the Court's attention the Plaintiffs

24    answers to number four where we requested the

25    narrative, the specific testimony to be given, and

123

1      what Plaintiffs provided, submitted prior to

2      trial.

3                       HONORABLE JUDGE CARLO:      But what

4      I am mentioning is the one before that says that

5      the Psychiatrist would testify as...

6                       MR. SEGARRA-MIRANDA:      Which...

7                       HONORABLE JUDGE CARLO:      ...to

8      emotional damages.

9                       MR. SEGARRA-MIRANDA:      Which is

10     very general, which simply states Plaintiff's

11     emotional condition resulting from GE Capital's

12     refusal to surrender...

13                      Your Honor, we come again to the issue

14     of fair play and adequate notice, Your Honor,

15     which was not given in this case, in the

16     Complaint, nor afterwards.

17                      At this time, now Plaintiff wants to

18     present the testimony as to treatment, as to

19     specif issues concerning the times, dates, when

20     the Psychiatrist allegedly saw the Plaintiffs,

21     Your Honor.

22                      And at this time Plaintiffs do not

23     even present the best evidence as to that, which

24     is the medical records.

25                      If Plaintiffs were to honor the basic

1    notions of fair play and of adequate notice, one,

2    they would have alleged in the Complaint because

3    they... the alleged acts and damages were known to

4    Plaintiffs at the time of drafting the Complaint.

5    They were not included in the Complaint, Your

6    Honor.                    Secondly, no amendment was

7    made to the Complaint, not even at the pre-trial.

8    At the pre-trial is the time when Plaintiff should

9    give notice to Defendant...

10   HONORABLE JUDGE CARLO:

11   Counsel, let's not argue through any of this.  The

12   best evidence is not... I don't think is

13   applicable to the situation because we have a

14   Psychiatrist, an expert, on the stand.

15   And you are objecting on the basis

16   that first of all you didn't have enough notice

17   that she was going to be put on the stand.

18   And I notice that there has been

19   notice given that she was on the stand to talk

20   about emotional damages.

21   And also you are basing it on best

22   evidence, and I don't think best evidence applies

23   to this situation, and we are not dealing with the

24   contents of the documents that are being submitted

25   in evidence.

125

1               This is proper as far as we are

2      concerned, this is proper evidence of emotional

3      damages, and the Witness may answer.  The

4      objection is denied.  Go ahead.

5               MR. PÉREZ-OBREGÓN:      Thank you,

6      Your Honor.

7      BY MR. PÉREZ-OBREGÓN:

8         Q       I am sorry, what was the last

9      question?  I believe it was "why did you increase

10     their medication or why did you change their

11     medication?"

12              HONORABLE JUDGE CARLO:      Well, she

13     was talking about, in 2004, that the Witness, Mr.

14     Wilfredo, presented symptoms, new symptoms, when

15     the objection came in, and didn't let her finish

16     her answer, but she was talking about the new

17     symptoms they were presenting in 2004.

18     BY MR. PÉREZ-OBREGÓN:

19        Q       Could you please explain to the Court

20     the new symptoms that were presented in... after

21     March of 2004?

22        A       Yes.  Mr. Wilfredo began to show

23     symptoms of restlessness and general males, he

24     started to complain about chest and head pains, he

25     had many worries, and he was starting to suffer

1    from insomnia.  He still had the depressive

2    symptoms, but he was exhibiting them to another

3    degree.

4         Q       Did you wish to add anything else to

5    that?

6         A       Yes.  At that moment?

7         Q       Yes.

8         A       I increased the Zoloft to 100

9    milligrams, and the Transen from 2.75 to 7.50.

10         Q       Thank you.  And during the course of

11    your treatment of Mrs. Sonia Hernández-Meléndez,

12    was her medication always the same or was there

13    any variation to that medication?

14         A       It was basically the same.

15         Q       Thank you.

16              MR. PÉREZ-OBREGÓN:       Your Honor,

17    no further questions with this witness.

18              HONORABLE JUDGE CARLO:       Okay.

19    Cross examination?

20              MS. LANDRAU-RIVERA:       No

21    questions, Your Honor.

22              HONORABLE JUDGE CARLO:       Very

23    well.  I take it that this witness, that there

24    has been no objection to this witness being

25    admitted, that the curriculum vitae that you spoke

1     about initially, was that settled?

2                   Did the parties agree on something?

3     Because I haven't heard from you regarding whether

4     this witness... do you intend a voir dire this

5     witness in any sort?

6                   Are you accepting the fact that she is

7     an expert?

8                   MS. LANDRAU-RIVERA:     Your Honor,

9     we can accept what she had stated in the

10    curriculum vitae, and we heard her testimony, and

11    she basically stated as to the treatment and...

12                  HONORABLE JUDGE CARLO:     Do you

13    have any objection that she be treated as an

14    expert?

15                  MS. LANDRAU-RIVERA:     No, Your

16    Honor.

17                  HONORABLE JUDGE CARLO:     Okay.

18    No.  Okay.  So we are going not to have to go

19    through that.  This witness is excused.  Thank

20    you, Dr...

21                  WITNESS:     Thank you.

22                  HONORABLE JUDGE CARLO:     ....Sanz.

23    Watch your step there.  And I think we've

24    concluded also with the...  Ms. Beckerleg, is that

25    correct?

**JAMES ROHAN REPORTERS**
Tel. 725-7203 Cell 329-0114 Email  rohanmav@aol.com
P.O. Box 16062, Santurce, P.R. 00908

1           MR. PÉREZ-OBREGÓN:        Yes, Your

2    Honor.

3           HONORABLE JUDGE CARLO:        The

4    Translator.  Thank you so much.

5           COURT INTERPRETER:        Thank you.

6           HONORABLE JUDGE CARLO:        You can

7    also step off the stand.  We have some documents

8    that are on that bench.  Marshall... Lissette.

9    Are those exhibits?

10          Alright.  Who do those belong to?

11   Don't leave anything around here and get lost.

12          Alright.  At this time...  We'll wait

13   for the Witness to step off the stand.

14          What I intend to do is to give you...

15   give you a few minutes as a closing statement,

16   okay?

17          MR. PÉREZ-OBREGÓN:        Yes, Your

18   Honor.

19          HONORABLE JUDGE CARLO:        And then

20   I am going to allow...  Thank you.  I am going to

21   allow you a period of time to file a memorandum of

22   law and facts, which I think probably...

23          I know you are want a record.  At

24   least, I am going to want a record of the trial,

25   of the evidence.  How long do you think it would

129

1    take us to get a record prepared?

2                    UNIDENTIFIED FEMALE VOICE:      A

3    transcript, Judge?

4                    HONORABLE JUDGE CARLO:      A

5    transcript, yes.

6                    UNIDENTIFIED FEMALE VOICE:      Okay.

7    Next week.  Monday, Tuesday.

8                    HONORABLE JUDGE CARLO:      Monday or

9    Tuesday?

10                   UNIDENTIFIED FEMALE VOICE:      Monday

11   or Tuesday.

12                   HONORABLE JUDGE CARLO:      Well,

13   we'll give the parties twenty days, is that okay?

14   Twenty working days and we'll schedule... if this

15   is done by... let's stay by Wednesday of next

16   week, it'll be the fourteenth.

17                   Let's say the fifteenth the record

18   will be ready, if we take twenty days.  Fifteenth

19   of July is twenty days to submit the memorandum of

20   law and facts, okay?  On each side.

21                   No reply unless you get leave of Court

22   to reply.  Just straight memorandums.  And...

23                   But at this time I would like to hear

24   a closing... closing arguments on both sides.

25                   UNIDENTIFIED FEMALE VOICE:      This

130

1    would be simultaneous...

2                          MR. PÉREZ-OBREGÓN:        Yes...

3                          UNIDENTIFIED FEMALE VOICE:

4    Simultaneously...

5                          HONORABLE JUDGE CARLO:

6    Simultaneously, yes.

7                          UNIDENTIFIED FEMALE VOICE:

8    Okay.               HONORABLE JUDGE CARLO:

9    Like fifteen... fifteen, July.

10                         UNIDENTIFIED FEMALE VOICE:      Okay.

11                         HONORABLE JUDGE CARLO:       Alright.

12   Yes, Counsel.

13                         MS. LANDRAU-RIVERA:      May I, Your

14   Honor?

15                         HONORABLE JUDGE CARLO:       Sure.

16                         MS. LANDRAU-RIVERA:      Your Honor,

17   this counsel will be out of Puerto Rico from July

18   first until July twenty-eighth.  And it has been

19   scheduled a family gathering for months now, and

20   it is not possible for me to cancel it.

21                         If this honor... I will plead with the

22   Court that some time in early August we will try

23   and submit it.

24                         HONORABLE JUDGE CARLO:       It's...

25   Counsel?

1        MR. PÉREZ-OBREGÓN:       There are

2   two counsels, Your Honor.

3        HONORABLE JUDGE CARLO:       It seems

4   to me that August is a little bit...  When are you

5   returning?

6        MS. LANDRAU-RIVERA:       The twenty-

7   eighth.

8        HONORABLE JUDGE CARLO:       The

9   twenty-eight of July.  Well, let's say... I am

10  going to give you an additional...  Let's say the

11  fifteenth of August?

12       MS. LANDRAU-RIVERA:       Thank you,

13  Your Honor.

14       HONORABLE JUDGE CARLO:       Okay.

15  Fifteen, August.  It's the last date to file the

16  memorandums. Let's hear from...

17       Let's hear the closing statements now.

18  And we'll start with Mr. Pérez-Oregón.

19       MR. PÉREZ-OBREGÓN:       Your Honor,

20  this is very simple.  On page three, paragraph

21  thirteen of the initial complaint it states

22  "Defendants' refusal to relinquish title of the

23  said vehicle as well as its unlawful appropriation

24  of Debtor's insurance check has caused damage to

25  Plaintiffs and constitutes willful violation of

132

1      the automatic stay of 11 USC, Section 362 (a), and

2      of the Discharge Injunction of 11 USC, Section

3      524".

4                    That is going of to encompass any sort

5      of damage, Your Honor.

6                    In addition, Rule 15 of the Rules of

7      Civil Procedures as applied to bankruptcy rules of

8      procedure states that amendments to conform to the

9      evidence may be raised at the hearing".

10                   That is just... And it doesn't even

11     conform... There hasn't even been any amendments

12     because we have been alleging the same things

13     since day one, Your Honor.

14                   As to the evidence of the

15     Psychiatrist, that was notified to counsels in the

16     pre-trial report that was notified to counsels in

17     the answer to interrogatories submitted by them.

18                   As to the narrative of the witness'

19     testimony, Your Honor, we admit that they asked...

20     they requested that in the Interrogatories, Your

21     Honor, and that that was not submitted.  However,

22     as I said, we forgot.  And they forgot too,

23     because they never notified us.

24                   They never submitted a motion under

25     Rule 37.  And they waited until two days before

1    the hearing to bring that up, when they knew of

2    this hearing back in February of 2006, Your Honor.

3             That constitutes latches, Your Honor,

4    they should have requested this beforehand and not

5    two days before the hearing.

6             HONORABLE JUDGE CARLO:        Well,

7    this Court allows motions and eliminates, doesn't

8    it?

9             Motions to eliminate are usually filed

10   very late in time.  Why is this one...

11            Did we have a pre-trial order on this

12   case, that states...

13            MR. PÉREZ-OBREGÓN:        Your

14   Honor...

15            HONORABLE JUDGE CARLO:        ...a

16   date for motions unlimited?

17            MR. PÉREZ-OBREGÓN:        ...a pre-

18   trial conference never took place.

19            We came here twice, and on both

20   occasions the Defendants requested the pre-trial

21   conference be changed to a status conference

22   because it was not prepared for the pre-trial

23   hearing.

24            MS. LANDRAU-RIVERA:        That is not

25   correct, Your Honor.

134

1                    HONORABLE JUDGE CARLO:      Did we

2      have a pre-trial order?

3                    Did we issue a pre...

4                    Can I see a copy of the pre-trial

5      order?

6                    UNIDENTIFIED FEMALE VOICE:      I'll

7      verify that, Judge.

8                    MS. LANDRAU-RIVERA:      If I may,

9      Your Honor?

10                    HONORABLE JUDGE CARLO:      Now,

11      let's wait.  One at a time.

12                    MR. PÉREZ-OBREGÓN:      In fact, Your

13      Honor, Defendants never even submitted a pre-trial

14      report.

15                    Two days... two years after the case

16      was filed, after this complaint was filed, we

17      still don't have a pre-trial report from the

18      Defendants.

19                    HONORABLE JUDGE CARLO:      Anything

20      else?

21                    MR. PÉREZ-OBREGÓN:      No, Your

22      Honor.

23                    HONORABLE JUDGE CARLO:      Okay.

24      Counsel?

25                                        (3:17 P.M.)

1                  (Whereupon, the hearing in the above

2          entitled matter was terminated.)

3

136

**CERTIFICATE OF COURT REPORTER**

I, **JAMES ROHAN**, Certified Professional Stenographer;

DO HEREBY CERTIFY:

That the foregoing is a full, true and correct transcript of the aforesaid testimony which was taken down by electronic recording and thereafter reduced to typewriting under my direction.

I FURTHER CERTIFY that I am not attorney for nor counsel to either or any of the parties in interest nor in any way interested in the outcome of said action.

WITNESS MY HAND this 19th day of June 2006 in San Juan, Puerto Rico.

_____
COURT REPORTER

**JAMES ROHAN REPORTERS**
Tel. 725-7203 Cell 329-0114 Email rohanmav@aol.com
P.O. Box 16062, Santurce, P.R. 00908