# IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF PUERTO RICO

| | | |
|---|---|---|
| **IN RE**: | * | **CASE NO.   00-00801(GAC)** |
| | * | |
| **WILFREDO DE JESUS RIVERA** | * | **CHAPTER 13** |
| **SONIA M HERNANDEZ MELENDEZ** | * | |
| | * | **ADV.  PROC.  NO. 04-00165** |
| **Debtors** | * | |
| | * | |

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

| | | |
|---|---|---|
| | * | |
| **WILFREDO DE JESUS RIVERA** | * | |
| **SONIA M HERNANDEZ MELENDEZ** | * | |
| | * | |
| **Plaintiffs** | * | |
| | * | |
| **Vs.** | * | |
| | * | |
| **GE CAPITAL CORPORATION OF PR** | * | |
| | * | |
| **Defendant** | * | |
| | * | |
| | * | |
| | * | |

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

## <u>MEMORANDUM</u>

**TO THE HONORABLE COURT:**

      **COME NOW,** the above-named plaintiffs through the undersigned attorney and very respectfully pray and state:

*Page -2-*

## I.  Facts

1.      Plaintiffs filed complaint for violation of 11 USC § 362 and 524 and
        request for damages on July 13th, 2004.

2.      Debtors alleged that they are the owners of a 1997 Peterbilt truck tractor
        serving as collateral for defendant General Electric Corporation's claim
        which was paid in full through their chapter 13 plan.

3.      Debtors also alleged that defendant refused to honor the discharge by
        failing to relinquish title free and clear in their favor, by claiming that a
        balance on the debt was still pending and by retaining a check in the
        amount of $1,196.00 issued by Royal And Sun Alliance Company to cover
        insured damages on the stated vehicle.

4.      In its <u>Decision And Order</u> of February 24th, 2006 this Court found that
        General Electric Corporation had indeed violated the discharge order of 11
        USC § 524(a) ordering defendant to immediately deliver title of the
        Peterbilt truck to debtors and immediately refund all insurance proceeds
        received relating to post discharge vehicle repairs.

*Page -3-*

5.    That a separate hearing to determine damages was scheduled for June 9th, 2006.

6.    At the evidentiary hearing, debtor Wilfredo de Jesus testified that he went to defendant's offices on no less than four occasions to have title of the vehicle transferred to his name; that at one time he presented copy of the discharge order; that at another time he faxed evidence of payments of his chapter 13 plan from his office of employment to GEC's offices; that on the several occasions he attempted to have transfer completed he was made to feel "bad"and "harassed."

7.    This witness also testified that the truck had been parked in his yard for the past two years; that he could not sell or trade it since he did not have clear title; and that he believed it had **depreciated $35,000.00** since his discharge (transcript p. 53, line 24 and p. 61, line 14);  and **that he had found a purchaser who was willing to pay $70,000.00** for the vehicle but because of  the "lien" could not complete the sale.  (Transcript , p. 82, line 29.)

*Page -4-*

8.     In addition, emotional damage was asserted in that it made him angry to see the truck parked in his yard day after day; that he felt that his bankruptcy procedure had been in vain; that he had trouble sleeping and mood swings which he attributed to his feelings of frustration over GEC's obstinacy in not honoring his discharge injunction and that he was forced to take prescribed medication as a result.

9.     Co-plaintiff Sonia M. Hernández Meléndez also testified stating that she had personal knowledge that her husband was having trouble sleeping at night since GEC's denial of the "permit" two and a half years before, that on several occasions she had found him crying in the dark instead of in bed, that due to his personality changes they remain at home most of the time since he has no desire to go out and that she has personal knowledge that their children are afraid of him and don't want to be with them. This witness also stated that she felt that their bankruptcy had been in vain and that every day that she sees the truck parked in her yard it makes her feel like ". . . September 11. I feel like a great sadness and a great restlessness, . . ."

10.    The final witness, psychiatrist Dr. Carmen Sanz, testified that she had been

*Page -5-*

treating Mr. Wilfredo de Jesús and Mrs. Sonia M. Hernández Meléndez for

depression and anxiety symptoms since October 2002 and that during the

course of her treatment their conditions  had improved.


11.    Dr. Sanz also testified that Mr. de Jesús began to present other symptoms in

March of 2004, symptoms of restlessness and general "males", that he

complained about chest and head pains, and that he was starting to suffer

from insomnia.  This witness also testified that Mr. de Jesús still had

depressive symptoms but "that he was exhibiting them to another degree."

As a result Mr. de Jesús' medication, Zoloft,  was increased to 100

milligrams and Transon from 2.75 to 7.50.


## II.  Applicable Law


Money damages are an attempt to compensate the plaintiff for harm suffered.  The

types and measure of damages vary according to the nature of the claim, and include

pecuniary (loss of income, medical expenses), non-pecuniary (pain and suffering), and

punitive (to deter wrongful conduct) damages.[1]

---

[1] Clark, David S. In  The Oxford Companion To American Law, edited by Kermit L. Hall, Oxford University Press, New York, N.Y., 2002: 211

*Page -6-*

In this circuit, a bankruptcy court is authorized to utilize § 105 of the Code to enforce the discharge injunction of § 524 and order damages for plaintiff if so required. Bessette v. Avco Financial Services, Inc., 230 F.3d 439 (2000.); In re Singleton, 269 B.R. 270 (D.R.I., 2001).

Code § 105 authorizes the bankruptcy court to exercise its equitable powers to facilitate the implementation of other Bankruptcy Code provisions.  Together with § 524 courts have made use of this statutory contempt power to order monetary relief, in the form of actual damages, attorney fees, and punitive damages, when creditors have failed to honor the discharge .  In re Barry, 330 B.R. 28 (Bankr. D. Mass. 2005); In re Ray, 262 B.R. 580 (D. Me. 2001).; In re Dunmore, 254 B.R. 761, 86 A.F.T.R.2d 2000-6854 (Bankr. N.D. Cal. 2000); In re Lafferty, 229 B.R. 707 (Bankr. N.D. Ohio 1998); Pereira v. First North American Nat. Bank, 223 B.R. 28, Bankr. L. Rep. (CCH) P 637 (N.D. Ga. 1998).

### III.  Punitive Damages

In In re Ocasio, 272B.R. 815, 2002 WL 267330 (1st Cir. BAP (P.R.) 2002) this Court stated that in order to determine the appropriateness of a punitive damage award, a court should follow the guidelines given by the Supreme Court in BMW of N. Amer.,

*Page -7-*

Inc. v. Gore, 517 U.S. 559, 116 S.Ct. 1589, 134 L.Ed.2d 809 (1996).  In accordance to

BMW, Ocasio evaluated  the reprehensibility of defendant's conduct; the ratio between

the compensatory and punitive damages, and the difference between the punitive damage

award and the civil penalties imposed for comparable conduct.


Ocasio went on to state:


"With respect to the first factor, the First Circuit has stated that '[t]he automatic stay is

among the most basic of debtor protections under bankruptcy law,' and that '[i]n order to

secure ... [its] ... important protections, courts must display a certain rigor in reacting to

violations....' In re Soares, 107 F.3d 969, 975 (1st Cir.1997).  For individual debtors, §

362(h) provides the vehicle for reacting to violations, as '[t]he primary purpose of

punitive damages awarded for a willful violation of the automatic stay is to cause a

change in the creditor's behavior;  ...  [and] ... the prospect of such change is relevant to

the amount of punitive damages to be awarded.'  In re Shade, 261 B.R. 213, 216

(Bankr.C.D.Ill.2001) (citing In re Riddick, 231 B.R. 265, 269 (Bankr.N.D.Ohio 1999),

and In re Novak, 223 B.R. 363 (Bankr.M.D.Fla.1997) (bankruptcy court gauges punitive

award based on gravity of creditor's offense, and sets award at level sufficient to ensure

that it will punish and deter)).  The court in Shade listed a number of factors to be

considered in awarding punitive damages, factors that are not inconsistent with those set

*Page -8-*

forth in <u>BMW</u>, including: 'the nature of the creditor's conduct, the nature and extent of

harm to the debtor, the creditor's ability to pay damages, the level of sophistication of the

creditor, the creditor's [*826] motives, and any provocation by the debtor.' Id. (citations

omitted)."


        In the instant matter, defendant GEC knew or should have known of its legal

inability to attempt collection actions directly against debtors.  As recognized by this

court in this proceeding's <u>Decision And Order</u> of February 24th, 2006, GEC was aware of

debtors' bankruptcy petition, hired an attorney to represent its interests before this forum,

filed its claim, and  ". . .on May 12th, 2000, GEC filed a motion for relief from automatic

stay under 11 USC § 362 (dkt.#14A).  Among other issues GEC complained that the

debtors' plan extended the contract between GEC and the debtors for eight months after

the contract's due date, without the payment of interest.  On July 7th, 2000, the debtors

and GEC filed a stipulation for adequate protection (dkt. #28)."  (P. 2, Adv Doc. #31.)

GEC, therefore, was well aware of the bankruptcy petition.


        GEC is not an unsophisticated creditor.  It has conducted credit transactions in

Puerto Rico for years, has been represented before this Court for years and knew or

should have known that it had a legal duty to consult with its attorney as soon as it was

made aware that a discharge order was in place.

*Page -9-*

And yet, its attitude has been one of complete disregard  for this Court and its

orders even during this entire proceeding:

(a)     it failed to heed the discharge order even when so presented by debtors.;

(b)     it denied having done so  (Answer, paragraph 1.);

(c)     it denied having filed a proof of claim in debtors' bankruptcy case
(Answer, paragraph 1.)

(d)     it failed to answer Plaintiff's Interrogatories of **September 14th, 2004**, as a
result, the pre-trial hearing scheduled for **November 12th, 2004** could not
be celebrated but was instead converted to a "status conference";

(e)     it failed to heed this Court's order to conclude discovery by January 31st ,
2005 and have pre-trial reports filed by February 15th, 2005.  (Adv. Proc.
#'s 9 and 10);

(f)     that by the second pre-trial hearing scheduled for **March 8th, 2005**, GEC
had still not answered plaintiff's original Interrogatories of September
2004, thereby discovery was not completed in accordance to this Court's
previous orders nor pre-trial reports submitted by which a third pre-trial
hearing was scheduled for **August 24th, 2005**;

(g)     that <u>defendant never submitted a pre-trial report</u> and consequently a pre-
trial hearing was never celebrated in this case;

(h)     that this Court ordered GEC to immediately deliver title of the Peterbilt
truck to debtors and immediately refund all post-discharge insurance
proceeds in its <u>Decision and Order</u> of **February 24th, 2006**, yet by the date
of the evidentiary hearing of **June 9th, 2006**, title had still not been
delivered[2] and the proceeds were returned  that same morning.  (Amended
transcript, p. 144.)

That it is precisely to guard against the type of conduct demonstrated by GEC that

the concept of punitive damages exist.  Without it, parties could act with impunity, no

matter its disobedience of the law, as GEC has up to this point.  Punitive damages have

been defended as a salutary method of discouraging evil motives, and as an incentive to

---

[2] Title was delivered some weeks after the hearing.

*Page -10-*

bring into court and redress a long array of petty cases of outrage and oppression that a

private individual would otherwise find not worth the trouble and expense of a lawsuit.

See <u>Mathias v. Accor  Econ. Lodging, Inc.</u>, 347 F.3d 672 (7th Cir. 2003).

Moreover, as this Court stated in <u>Ocasio</u> "creditors must be presumed to be on

notice that if they violate the automatic stay they will be liable for punitive damages."

In <u>BMW</u> the Supreme Court refused to establish a mathematical formula for

determining punitive damages and instead stated that the proper analysis is "whether

there is a reasonable relationship between the punitive damages award and the harm

likely to result from the defendant's conduct as well as the harm that actually has

occurred.", 116 S.Ct. at 1602.  However, the Court indicated that an award of four to ten

times the amount of compensatory damages may be appropriate depending upon the

circumstances in each case.

Some examples of punitive awards for discharge violations are as follows:

<u>In re Shade</u>, 261 B.R. 213 (2001.) - $9,000.00 punitive damages awarded for creditor's
willful violation of stay;

<u>In re Poole</u>, 242 B.R. 104, 1999 WL 1211808 (Bkrtcy.N.D.Ga.,1999.) - $7,500.00
punitive damages for discharge injunction violation against lease company in addition to
other damages and attorney's  fees;

*Page -11-*

<u>Matter Of Arnold</u>, 206 B.R. 560, 30 Bankr.Ct.Dec. 680 (Bkrtcy.N.D.Ala.,1997.) -
$15,000.00 in punitive damages awarded for credit union's violation of stay;

<u>In re Fry</u>, 122 B.R. 427 (Bankr. N.D. Okla. 1990) - $25,000.00 punitive damages
awarded against bank for discharge violation.

      In this case, GEC, a sophisticated company, is more powerful than most debtors

and as a finance institution, is likely to repeat its oppressive behavior with other debtors.

Moreover, GEC's behavior in this case demonstrates that it does it not fear this Court and

that it is under the misguided impression that it may act with impunity as far as

Bankruptcy Law is concerned.


## IV.  Emotional Damages


      Plaintiffs' complaint requests that this Court  " award plaintiffs *damages* and

punitive damages in the amount of $50,000.00 plus legal fees in the amount of

$10,000.00."


      Defendant has argued that plaintiffs should not have presented evidence of

emotional damages inasmuch as the complaint itself did not specifically mention this

type of damages.  However, the term "damages" is broad enough to encompass

emotional damages.  Moreover, the First Circuit has held that pleadings should be

construed liberally.  See <u>Rodriguez v. Doral Mortgage Corp.</u>, 57 F. 3rd 1168 (1st Cir.,

*Page -12-*

1995).

In addition, Bankruptcy Rule 7015(b) permits pleadings to be amended to conform with the evidence presented at trial.

Moreover, defendant had advance notice that evidence of emotional damages was scheduled to be presented through plaintiffs' pre-trial report and through answers to defendant's interrogatories, both of which were provided a full year or more before the hearing.

The First Circuit Court of Appeals recently tackled the issue of emotional damages in 524 violations in <u>In re Rivera Torres</u>, 432 F.3d 20, 96 A.F.T.R.2d 2005-7398 (C.A.1,2005.).  The Court analyzed the effect of § 106(a)(3) on § 362(h) and § 524 and concluded that Congress, did not intend for emotional distress damages to be levied against government agencies in matters of discharge violations.

However, it made clear that its ruling was limited only to situations where the government was a party to the controversy, thereby leaving open the possibility that it might rule differently in cases where only private interests were involved.  "The temporal distinction we draw is important because it means that we are not here resolving any

*Page -13-*

question as to the types of relief that are *now* available to private parties under any of the

enumerated sections."  (Original emphasis.)


*Now* bankruptcy courts include emotional distress damages within the meaning of

"money damages" when so evidenced.  (Emphasis ours.)  See In re Stinson, 295 B.R.

109, Bankr. L. Rep. (CCH) P 78880 (B.A.P. 9th Cir. 2003) Aiello v. Providian Financial

Corp., 239 F.3d 876, 37 Bankr. Ct. Dec. (CRR) 109, Bankr. L. Rep. (CCH) ¶ 78356 (7th

Cir. 2001);  In re Abrams, 127 B.R. 239, 21 Bankr. Ct. Dec. (CRR) 1283, 25 Collier

Bankr. Cas. 2d (MB) 15, Bankr. L. Rep. (CCH) ¶74023 (Bankr. 9th Cir. 1991); Matter of

Sams, 106 B.R. 485 (Bankr. S.D. Ohio 1989); In re Holman, 92 B.R. 764 (Bankr. S.D.

Ohio 1988); In re Miller, 10 B.R. 778, 4 Collier Bankr. Cas. 2d (MB) 530, Bankr. L.

Rep. (CCH) ¶67990 (Bankr. D. Md. 1981), order aff'd, 22 B.R. 479, 7 Collier Bankr.

Cas. 2d (MB) 124 (D. Md. 1982).


Indeed, in Fleet Mortgage Group v. Kaneb, 196 F.3d 265 (1st Cir.1999), a stay

violation matter where only private parties were involved, the First Circuit stated "we

note that emotional damages qualify as 'actual damages' under § 362(h)."


Bankruptcy courts' propensity to grant emotional damages awards is due to a

belief that "Emotional distress is an actual injury . . . Legitimate human emotions are

*Page -14-*

brought to bear when one's rights are trampled on.",  In re Holden, 226 B.R. 809, 812,

(Bankr. D.Vt. 1998). "The natural and powerful emotional reactions cannot be dismissed

as 'fleeting' or 'inconsequential'", In re Flynn, 169 B.R. 1007, 1023 (Bankr. S.D. Ga.

1994).


In applying the above sentiment to § 524 violations the court in In re Poole, 242

B.R. 104, 1999 WL 1211808 (Bkrtcy.N.D.Ga.,1999.) determined that the inherent

powers of  §105 permitted bankruptcy courts authority to grant compensatory damages

for emotional distress caused by a willful violation of the automatic stay or discharge

injunction.


Some years before, the court in In re Rollins, 200 B.R. 427 (Bankr.N.D.Ga.1996)

reached this same conclusion.


And in granting a $12,000.00 emotional distress award, the court in In Re Taylor,

252 B.R. 201, 2000 WL 1207170 (Bkrtcy.N.D.Ala.,2000.) made clear that "The

language of § 105 encompasses any type of order, whether injunctive, compensative or

punitive, as long as it is necessary or appropriate to carry out the provisions of the

Bankruptcy Code.  Therefore, § 105(a) grants courts independent statutory powers to

award monetary and other forms of relief ... to the extent such awards are necessary and

*Page -15-*

appropriate to carry out the provisions of the Bankruptcy Code."

    In <u>Rivera Torres</u>, in its discussion of emotional damages, the First Circuit Court
states "Even today the question of whether emotional distress damages are 'actual
damages' within the meaning § 362(h) has not been conclusively determined.  The Ninth
Circuit, the only circuit to hold thus far that the term 'actual damages' in § 362(h)
encompasses emotional distress damages, also acknowledges that the issue of whether
that is what Congress intended is not clear.  <u>In re Dawson</u>, 390 F.3d 1139, 1146 (9th
Cir.2004). "

    However, debtors read <u>In re Dawson</u> somewhat differently.  At 1146 the Ninth
Circuit Court states:  "Reading the legislative history as a whole, *we are convinced* that
Congress was concerned not only with financial loss, but also--at least in part--with the
emotional and psychological toll that a violation of a stay can exact from an individual.
Because Congress meant for the automatic stay to protect more than financial interests, it
makes sense to conclude that harm done to those non-financial interests by a violation are
cognizable as 'actual damages.'  We conclude, then, that the 'actual damages' that may
be recovered by an individual who is injured by a willful violation of the automatic stay,
11 U.S.C. § 362(h), include damages for emotional distress.  In so holding, we join an
emerging consensus recognizing the availability of damages for emotional distress that

*Page -16-*

results specifically from a willful violation of the automatic stay."  (Emphasis ours.)

And as recognized in <u>Rivera Torres</u>, Congress is presumed to know the content of background law and does not legislate in a vacuum.  Citing <u>Villescas v. Abraham</u>, 311 F.3d 1253, 1261 (10th Cir.2002) it stated "The Court should assume, as it ordinarily does, that Congress legislated against a background of law already in place and the historical development of that law."

Therefore, we can assume that Congress was aware of the courts' increasing use of §§ 362 and 524 to grant emotional distress awards as part of money damages to debtors who had suffered as a result of creditors' violation of the injunctive provisions of the Bankruptcy Code.

However, as part of the 2005 Amendments, Congress remained silent on the matter amending only §342, in order to provide that a "monetary penalty may not be imposed on a creditor for a violation of a stay in effect under section 362(a) (including a monetary penalty imposed under section 362(k)) or for failure to comply with section 542 or 543 unless the conduct that is the basis of such violation or of such failure occurs after such creditor receives notice effective under this section of the order for relief."

*Page -17-*

In effect, by failing to qualify the types of monetary penalties to be awarded, Congress silently ratified "the types of relief that are *now* available to private parties under any of the enumerated sections."[3]

## Conclusion

In awarding damages, request is made that this Court take into consideration the attested depreciation of debtors' truck in the amount of **$35,000.00** as well as debtors' **failure to sell the vehicle for $70,000.00** as testified and impose punitive damages and emotional damages for a total amount **not less** than **$50,000.00** and attorney's fees **not less** than **$10,000.00** as requested in the complaint.

**RESPECTFULLY SUBMITTED.**

**I HEREBY CERTIFY** that a copy of this writ has been sent to attorney for defendant General Electric Capital Corporation of Puerto Rico, Mr. Wilfredo Segarra Miranda, Esq., PO Box 9023385, San Juan, PR 00902-3385 segarralaw@prtc.net; Ms. Noemí Landrau Rivera, Landrau And Associates, PMB 660 497 Ave. E Pol, San Juan, PR 00926-5639 and to standing Chapter 13 Trustee,  José Carrión, Esq. PO Box

---

[3] In re Rivera Torres, 432 F.3d 20, 96 A.F.T.R.2d 2005-7398 (C.A.1,2005.).

*Page -18-*

9023884, San Juan, PR  00902 3884 ecfmail@ch13-pr.com.

In Bayamón, Puerto Rico, this 5th day of October, 2006.

**ROBERTO PEREZ OBREGON
PO BOX 9497
BAYAMON PR  00960 8041
TEL:  787-787-9883**
rperez23@msn.com
elizabethalemany@msn.com