```
                IN THE UNITED STATES BANKRUPTCY COURT
                   FOR THE DISTRICT OF PUERTO RICO

In re:                                  :
                                        :
WILFREDO DE JESUS RIVERA                :    Case No. 00-00801(GAC)
SONIA M. HERNANDEZ MELENDEZ,            :
                                        :
        Debtors                         :    Chapter 13
_____:
                                        :
WILFREDO DE JESUS RIVERA                :
SONIA M. HERNANDEZ MELENDEZ,            :
                                        :
        Plaintiffs                      :
                                        :
        v.                              :    Adv. No. 04-00165
                                        :
GENERAL ELECTRIC CAPITAL CORP.          :
OF Puerto Rico,                         :
                                        :
        Defendant                       :
_____:
```

**DECISION AND ORDER**

In the present case, an evidentiary hearing was held on June 9, 2006, to determine the damages suffered by the debtors, Wilfredo De Jesus Rivera ("De Jesus") and Sonia M. Hernandez Melendez ("Hernandez") (collectively "debtors"), for the wilfull violation of the discharge injunction by General Electric Capital Corp. of P.R. ("GEC"), as per Decision and Order entered on February 24, 2006 (Docket #31).

I. Procedural History

The debtors filed a petition under Chapter 13 on January 28, 2000. The debtors scheduled GEC as a secured creditor in the amount of $35,002.00, with a conditional sales contract over a 1997

1

Peterbuilt truck. GEC filed an amended proof of claim on May 15, 2000, seeking the amount of $33,411.00. GEC did not include interest in its claim.

The debtors' amended plan provided for payments of $1,550.00 for thirty-six months, for a base of $55,800.00 (Docket #23, legal case). The debtors proposed to have the trustee pay GEC's secured claim in full. Debtors also proposed to provide GEC with insurance directly as of December 2001. No objections were filed. The plan was confirmed on August 4, 2000.

Prior to obtaining confirmation of their amended plan, on May 12, 2000, GEC filed a motion for relief from the automatic stay under 11 U.S.C. § 362 (Docket #14A, legal case). Thereafter, the parties filed a stipulation (Docket #28, legal case), in which the debtors provided adequate protection for GEC's secured claim by maintaining current payments under the plan. The debtors were required to maintain the collateral fully insured and in good condition and to "otherwise, fully comply with debtor's obligations and responsibilities under the conditional sale contract." The stipulation further provided that "GEC will maintain its lien until payment in full of the stipulated payment" and that "secured creditor will be paid in full within the due date of the contract." The Court entered an order approving the stipulation on August 4, 2000, the same date that the debtors' amended plan was confirmed.

On September 17, 2003, the trustee filed a notice of plan completion (Docket #34, legal case). The debtors received their

discharge on December 29, 2003 (Docket #35, legal case). Thereafter, the trustee filed his final report and account, which showed that GEC received $33,411.00 (Docket #39, legal case). The trustee gave notice to creditors and parties in interest that they had thirty days to file objections. No objections were filed.

On July 13, 2004, the debtors filed the present adversary proceeding, seeking damages for violation of the automatic stay and violation of the discharge injunction (Docket #1). The debtors also seek transfer of title to the vehicle in which GEC had a security interest. The debtors allege that since the discharge, they approached GEC on several occasions to have title to the vehicle transferred to the debtors and GEC refused. The debtors also state that GEC retained a check destined to the debtors for vehicle repairs. The debtors request damages based on these acts.

GEC filed a motion to dismiss the complaint and a request for summary judgment, asserting that pursuant to the conditional sales contract, the debtors still owe $3,897.27 for unpaid late charges and interest because its lien survived the bankruptcy discharge (Docket #15). The debtors filed an answer and a cross-motion for summary judgment, arguing that GEC is not entitled to interest outside of the plan because GEC agreed to its treatment under the plan, by failing to object confirmation (Docket #17).

On February 24, 2006, the Court entered a Decision and Order granting the debtor's motion requesting partial summary judgment (Docket #31). The Court further ordered that GEC had to immediately

3

deliver the title to the Peterbuilt truck to the debtors and that it should immediately refund to the debtors any insurance proceeds received, related to post discharge vehicle repairs. Finally, the Court scheduled an evidentiary hearing for June 9, 2006, to determine the damages suffered by debtors.

At the evidentiary hearing the parties presented the testimony of De Jesus, Hernandez and the psychiatrist Dr. Katherine Sanz ("Dr. Sanz") for the plaintiffs. No witnesses was presented for the defendant. The parties introduced two exhibits each. After the evidence was presented and the documentary evidence admitted, the Court requested memorandums of law and the matter was taken under advisement. On August 15, 2006, GEC filed the memorandum of law (Dockets #50 and #60) and on October 5, 2006, the debtors filed their memorandum of law (Docket #55).

II. Evidence and arguments presented by the parties

A. Debtors

The debtors introduced two exhibits: the certificate of the title of the Peterbuilt truck (Exhibit 1) and a check in the amount of $1,166.00, paid to the order of De Jesus and GE (Exhibit 2). De Jesus testified that he has been a trucker for forty years (Transcript page 28, line 11), that he is a partner of the Cooperativa de Camioneros (Transcript page 37 line 16) and that he is the owner of two trucks, the Peterbuilt 1997 and a Kensworth 2005, purchased in 2004 (Transcript page 43 line 15). De Jesus and

4

Hernandez have been married for thirty years (Transcript page 89 line 1).

As to the debtors' economic loss, De Jesus testified that he went to GEC's office four times to have the title transferred to him free of the lien (Transcript page 49 line 8). He also testified that he could not use the truck because the Public Service Commission did not give him the authorization due to GEC's lien (Transcript page 46 line 25 and page 74 line 1-3); that he could not sell the truck because the title of the truck had GEC's lien (Transcript page 86 line 25 and page 87 line 1); that he had a potential buyer that was willing to pay $70,000.00 in the year 2004 (Transcript page 53 line 24 and page 82 line 25), but that the truck has depreciated and he believes the same is now worth $45,000.00 (Transcript page 61 lines 13-14). De Jesus also testified that he could not use the truck as a trade-in and that he wanted to use the remainder of the sale's price for home improvements and his childrens' education (Transcript page 54, lines 2-12).

As to the debtors' emotional damages, De Jesus testified that having the truck parked in his house made him very angry (Transcript page 49 line 4), he felt harassed when GEC did not cancel the lien (Transcript page 49 line 5), he felt that the petition for bankruptcy had been in vain (Transcript page 51 lines 8-11) and that he had to take medication for his emotional condition, involving Zolof, Transen and Cozar (Transcript page 57

5

line 17). Hernandez also testified that she had found De Jesus crying in the dark several times (Transcript page 93 lines 21-25), that he did not want to go out (Transcript page 94 lines 22-25), that De Jesus' problems affected his relationship with his children (Transcript page 96 lines 2-5) and that before they filed the bankruptcy she had never seen De Jesus so worried about the debts (Transcript page 103 line 22). She also testified that she wanted to sell the truck to do home repairs and buy a new car (Transcript page 98 lines 5-6), that she thought that filing the bankruptcy petition was not worth the trouble (Transcript page 98 lines 16-18), she became restless and sad because of the situation (Transcript page 99 lines 1)and that she felt se was between "a wall and a sword" (Transcript page 103 line 22).

Finally, Dr. Sanz testified that the fist time the debtors sought this help in October of 2002 (Transcript page 114 line 6), that De Jesus went because he felt depressed and anxious (Transcript page 114 line 11) and that Hernandez had symptoms of depression (Transcript page 114 line 14). Dr. Sanz testified that De Jesus exhibited symptoms of depression such as sadness, no desire to do anything, poor concentration and insomnia (Transcript page 117 lines 15-18) and that his top concerns had to do with his job (Transcript page 117 lines 22-23). Dr. Sanz also testified that the original dose for his medication was 25 ml of Zolof and 2.7 of Transen but, then she had to change his medication after 2004 because his condition worsened, to 100 ml of Zolof and from 2.75ml

6

to 7.50ml Transen (Transcript page 118 lines 11-16 and page 126 lines 8-9). Dr. Sanz testified that De Jesus had symptoms such as restlessness, head pain and chest pain, many worries, insomnia, depressive symptoms but, to another degree (Transcript page 125 lines 22-25 and page 126 lines 1-3). Finally, she testified that Hernandez stayed with the same prescription throughout her treatment and that both had improved (Transcript page 116 line 21).

The debtors seek $50,000.00 in damages, attorney's fees, costs and punitive damages.

B. GEC

GEC introduced two exhibits: a list of cars in debtors' name (Exhibit A) and debtors' "Schedule B" (Exhibit B). GEC argued at the hearing that De Jesus bought a new truck ten days before filing the present adversary proceeding. Therefore it contends, that the debtors' allegations regarding economic preclusion as to buying a new truck are false and should be stricken from the complaint. Secondly, GEC contends that mental and emotional damages were not pleaded in the complaint thus, the Court should not admit the evidence presented regarding debtors' emotional damages. GEC contends that the debtors could have sold the truck and paid $3,800.00 to GEC to cancel the lien and then, file the present adversary case to recover the money. GEC argues that this would have minimized the damages. GEC concludes that the debtors did not suffer any real or economic damage and that if no economic loss is suffered, then the debtors are not entitled to an award of emotional damages.

7

III. Discussion

There are two matters pending before the Court, the first matter is the two issues presented by GEC contending that the debtors were precluded from presenting evidence regarding damages because they were not raised in the complaint, and that debtors are not entitled to emotional damages because they did not prove economic loss. Finally, the second matter is the determination of whether the debtors proved damages and if they are entitled to an award.

A. The discharge injunction

The Chapter 13 discharge operates to discharge the debtors from all debts provided by the plan. 11 U.S.C. § 1328(a). It continues to operate "as an injunction against the commencement or continuation of an action, the employment of process, or an act, to collect, recover or offset any such debt as a personal liability of the debtor." 11 U.S.C. §524(a)(2). The bankruptcy court can invoke § 105(a) to enforce the discharge injunction of § 524(a). Bessette v. Avco Fin. Servs., Inc., 230 F.3d 439, 445 (1st Cir. 2000). For violation of the injunction, the court may award damages, attorney's fees, and where appropriate, punitive damages. Id.

In the present case, the first matter is the issue presented by GEC contending that the debtors were precluded from presenting evidence regarding damages because they were not plead in the complaint. As per Federal Rule of Bankruptcy Procedure 7008, when a claim for relief is made, it shall contain: (1) the basis of

8

jurisdiction if the court does not have it already, (2) "a short and plain statement of the claim showing that the pleader is entitled to relief" and (3) a demand for judgment for the relief the plaintiff seeks. Fed. R. Bankr. P. 7008(a). If, on the other hand, the debtors were asking for special damages, then as per Federal Rule of Bankruptcy Procedure 7009, the debtors should have plead them specifically.

In the instant case, economic loss is one of the special damages that was specifically plead in the complaint (Docket #1, ¶ 11-12), but emotional damages are general damages that were generally plead in the complaint (Docket #1, ¶ 14). Moreover, for violation of the discharge injunction, invoking § 105, the court may award damages, attorney's fees, and where appropriate, punitive damages. Thus, GEC's request to strike from the record the evidence presented by the debtors regarding emotional damages will be denied.

B. Damages

It is well settled that a debtor can recover under § 105 for violation of specific Code provisions, including § 524. Section 105 provides bankruptcy courts with statutory contempt powers. In re Rivera Torres, 432 F.3d 20, 27 (1st Cir. 2005)(citing Bassette v. Avco Financial Sevices Inc., 230 F. 3d 439, 445 (1st Cir. 2000)). This includes the power to sanction a party, which inherently includes the power to award monetary relief to the debtor in the form of actual and punitive damages. In re Nosek, 363 B.R. at 648

9

(Bankr. D. Mass. 2007). In line with this interpretation of statutory contempt powers, bankruptcy courts across the country have awarded actual damages under § 105. See id.

1. Economic Loss

Any type of economic loss due to the violation of the discharge injunction is awarded as part of the actual damages. In the case of In re Johnson, 230 B.R. 466 (Bankr. D.D.C. 1999), the court held that the trustee was entitled to the amount for which he could have sold the car had creditor not seized it in violation of the automatic stay.

As to the debtors' economic loss, De Jesus testified that he could not use the truck because the Public Service Commission did not give him the authorization due to GEC's lien (Transcript page 46 line 25 and page 74 line 1-3); that he could not sell the truck because the title of the truck had GEC's lien (Transcript page 86 line 25 page 87 line 1); that he had a potential buyer that was willing to pay $70,000.00 in 2004 (Transcript page 53 line 24, page 82 line 25), but that the truck has depreciated and he believes the truck is now worth $45,000.00 (Transcript page 61 lines 13-14). De Jesus also testified that he could not give the truck in-trade and that he wanted to use the remainder of the value for home improvements and his kids' education (Transcript page 54 lines 2-12).

Defendants did not rebut any of the evidence presented by the debtors. In the cross-examination, De Jesus was consistent with

10

his previous testimony. He testified that he felt that although he could sell the truck by paying the lien, he did not do it because he thought that it was unfair (Transcript page 87 line 9). He testified that he bought another truck that cost him $120,00.00 but, that he has to pay interest and the payment is taken from his payroll (Transcript page 69 lines 4 and 7-8).

The Court believes that the debtors suffered economic loss due to GEC's refusal to eliminate the lien from the title of the truck. The Court also believes that the debtor mitigated the damages by buying another truck so he could go back to work. Thus, his loss is calculated in the following manner: approximate value of the truck in 2004 ($70,000.00) minus the approximate value of the truck in 2006 ($45,000.00) equals the equity lost by debtors ($25,000.00). Therefore, the Court will award the debtors the amount of $25,000.00 as actual damages for their economic loss.

2. Emotional distress damages

In the case of In re Rivera Torres, 432 F.3d at 27 (1st Cir. 2005), the First Circuit Court of Appeals took a temporal approach to emotional distress damages and held that "sovereign immunity bars awards for emotional distress damages against the federal government under § 105(a) for any willful violation of § 524." 432 F.3d at 27. But, in general, bankruptcy courts have treated emotional distress damages as coming under the purview of actual damages recoverable under § 105. See e.g., In re Curtis, 322 B.R. 470, 486 (Bankr. D.Mass. 2005)(awarding "compensatory damages" for

11

stress, weight loss, vomiting, and depression); <u>In re Barry</u>, 330 B.R. 28, 38 (Bankr. D.Mass. 2005) (awarding "emotional distress damages" for violation of discharge injunction). <u>See also</u> <u>In re Manzanares,</u> 345 B.R. 773 (Bankr. S.D.Fla. 2006); <u>In re Meyers,</u> 344 B.R. 61 (Bankr. E.D.Pa. 2006); <u>In re Feldmeier,</u> 335 B.R. 807 (Bankr. D.Or. 2005).

As to the debtors' emotional damages, De Jesus testified that having the truck parked at his house made him very angry (Transcript page 49 line 4), he felt harassed when GEC would not cancel the lien (Transcript page 49 line 5), he felt that the petition for bankruptcy had been in vain (Transcript page 51 lines 8-11) and that he had to take medication for his emotional condition, including increased doses of Zolof, Transen and Cozar (Transcript page 57 line 17). Hernandez also testified that she had found De Jesus crying in the dark several times (Transcript page 93 lines 21-25), that he did not want to go out (Transcript page 94 lines 22-25), that his problems affected his relationship with his children (Transcript page 96 lines 2-5) and that before they filed the bankruptcy she had never seen De Jesus so worried about the debts (Transcript page 103 line 22). She also testified that she wanted to sell the truck to do home repairs and buy a new car (Transcript page 98 lines 5-6), that she thought that filing the bankruptcy petition was not worth the trouble (Transcript page 98 lines 16-18), she felt restless and sad because of the situation (Transcript page 99 lines 1)and that she felt between "a wall and

12

a sword" (Transcript page 103 line 22).

Finally, Dr. Sanz testified that the fist time the debtors went to seek help was on October 2002 (Transcript page 114 line 6), that De Jesus went because he felt depressed and anxious (Transcript page 114 line 11) and that Hernandez went because she had symptoms of depression (Transcript page 114 line 14). Dr. Sanz testified that De Jesus exhibited symptoms of depression, such as sadness, no desire to do anything, poor concentration and insomnia (Transcript page 117 lines 15-18) and that his principal concerns had to do with his job (Transcript page 117 lines 22-23). Dr. Sanz also testified that the original dose for his medication was 25 ml of Zolof and 2.7 ml of Transen but, then she had to change his medication after 2004 because his condition worsened, to 100 ml of Zolof and from 2.75 ml to 7.50 ml Transen (Transcript page 118 lines 11-16 and page 126 lines 8-9). Dr. Sanz testified that he had symptoms such as restlessness, head pain and chest pain, many worries, insomnia, depressive symptoms but, to another degree (Transcript page 125 lines 22-25 and page 126 lines 1-3). Finally, she testified that Hernandez stayed with the same prescription throughout her treatment and that both had improved (Transcript page 116 line 21).

Defendants did not rebut any of the evidence presented by the debtors regarding emotional damages. The Court believes that De Jesus and Hernandez did in fact undergo emotional distress and suffering as a direct result of GEC's violation of the discharge injunction. Thus, the Court will award De Jesus the amount of

13

$8,000.00 as actual damages for his mental/emotional distress and suffering and award Hernandez the amount of $5,000.00 as actual damages for her mental/emotional distress and suffering plus, attorney's fees and costs.

    3. <u>Punitive Damages</u>

In the case of <u>In re Heghmann</u>, the Bankruptcy Appellate Panel for the First Circuit, held that punitive damages usually require more than a mere willful violation of the automatic stay. The Court will equate a violation of the automatic stay with a violation of the discharge injunction for the purpose of considering punitive damages. The Bankruptcy Appellate Panel outlined some factors to take into consideration, including: (1) the nature of the creditor's conduct; (2) the creditor's ability to pay damages; (3) the motive of the creditor; and (4) any provocation by the debtor. <u>In re Heghmann</u>, 316 B.R. 395, 405 (1st Cir. B.A.P. 2004). The Bankruptcy Appellate Panel also explained that courts often have limited the imposition of punitive damages to cases where there is "'egregious, intentional misconduct.'" <u>In re Heghmann</u>, 316 B.R. at 405 (citing <u>Lovett v. Honeywell, Inc.</u>, 930 F.2d 625, 628 (8th Cir. 1991)).

At the evidentiary hearing, the Court was surprised to find that GEC failed to transfer the title of the truck (Transcript page 145 lines 20-24), as per the Court's order of February 24, 2006 (Docket #31). In the present case, a violation of the discharge injunction occurred. When examining it, the Court finds that GEC's violation was "egregious, intentional misconduct." In

analyzing the factors considered by other courts in imposing punitive damages, the Court finds that the elements are present in this case. The Court finds that GEC' actions were egregious because it is a sophisticated creditor and the violation was committed because GEC was trying to collect $3,800.00 in interest that had not been requested in the bankruptcy. To the contrary, GEC stipulated as to treatment of its debt. The unpaid interest was clearly discharged. Likewise, the Court concludes that GEC's determination to litigate this matter and its blatant refusal to cancel the lien after being ordered to do so, further demonstrates obstinacy, lack of legitimate motive and provocation of the debtors. The Court also concludes that the creditor, as a commercial lending institution, has the ability to pay damages. The Court will award the sum of $15,000.00 in punitive damages.

IV. CONCLUSION

The debtors have proven that they suffered economic loss and emotional damages due to GEC's violation of the discharge injunction by not canceling the lien on the Peterbuilt truck, which had been paid in full through the debtors' plan. The Court also concludes that GEC's conduct entitles the debtors to punitive damages. The debtors will also be awarded attorney's fees and costs.

ORDER

It is ORDERED and ADJUDGED that General Electric Corp. is liable to the debtors for economic loss in the amount of $25,000.00. Also, GEC will pay De Jesus emotional suffering in the

15

amount of $8,000.00 and Hernandez emotional suffering in the amount of $5,000.00, punitive damages in the amount of $15,000.00, plus attorney's fees and costs. The plaintiff shall submit an itemized statement of fees and costs in twenty (20) days. The defendants are granted fifteen (15) days thereafter to file an objection.

    SO ORDERED.

    San Juan, Puerto Rico, this 20th day of November 2007.


                                 /s Gerardo A. Carlo-Altieri
                                 _____
                                 GERARDO A. CARLO-ALTIERI
                                 Chief, U.S. Bankruptcy Judge